KRUSE, Business Manager Local Union 494, International Brotherhood of Electrical Workers, AFL–CIO, Plaintiff-Appellant, v. MILLER BREWING COMPANY, Defendant-Respondent and Third-Party Plaintiff.†

Supreme Court

No. 76–156. *Submitted on briefs May 2, 1979.—*
*Decided May 30, 1979.*
(Also reported in 279 N.W.2d 198.)

† Motion for reconsideration denied, with $50 costs, on June 29, 1979.

For the appellant the cause was submitted on the briefs of *Gerry M. Miller* and *Goldberg, Previant & Uelmen, S.C.*, of Milwaukee.

For the respondent the cause was submitted on the brief of *Frank J. Daily, Patricia K. Ballman* and *Quarles & Brady* of Milwaukee.

DAY, J.   Local Union 494, International Brotherhood of Electrical Workers, AFL–CIO, by its business manager, James Kruse, appeals from a judgment, entered June 4, 1976, by the circuit court for Milwaukee County, dismissing an action for a construction lien claim against the Miller Brewing Company.

The questions on appeal are:

1.   Whether delivery by a messenger service of a notice of intention to file a claim for lien to a receptionist who was authorized to receive a corporation's registered mail, but who was not authorized to accept service of process for that corporation, satisfies the service requirement of sec. 289.06(2), Stats.?

2.   Whether a local union through its agent may give notice of intention to file claim for lien on behalf of certain members of the union before those members have assigned their lien claim to the union?

We hold that the notice requirements of sec. 289.06(2), Stats. 1973 were substantially complied with, and that notice was sufficient as to all eight lien claimants involved in this appeal. Therefore, we reverse.

Miller Brewing Company (Miller) is a Wisconsin corporation with its principal place of business at 4000 West State Street in Milwaukee. For at least twenty years prior to March 1973, Dietz Electric Co., Inc. (Dietz) had constructed and repaired electric facilities for Miller at its Milwaukee plant. Local Union 494, International Brotherhood of Electrical Workers, AFL–CIO (Local 494), was the collective bargaining representative for electricians employed by Dietz. James Kruse has been the business manager of Local 494 since 1971.

Dietz was adjudicated bankrupt on March 7, 1973. At that time it owed approximately two weeks of wage and fringe benefits to eight members of Local 494 (claimants) for work they had performed at Miller between February 26 and March 7, 1973. The names of each employee and the amounts of their claims are as follows:

| | |
|---|---|
| Robert Komp | $940.64 |
| Heite Lattman | $746.67 |
| Richard Bagley | $746.67 |
| Clifford Ferry | $813.28 |
| William Herman | $739.76 |
| Carroll Hunt | $822.47 |
| Zeger Muller | $872.67 |
| Paul Zastrow | $822.47 |

Problems arose when the trustee in bankruptcy for Dietz did not pay the Dietz employees. The unpaid employees attempted to assert a statutory construction lien claim against Miller. Mr. Kruse, as business manager of the union, prepared and signed a notice of intention to file claim for lien against Miller dated August 4, 1973 in the amount of $6,504.63. On August 6, 1973, four of the eight claimants assigned their lien rights to

the union. The other four claimants did not assign their claims to the union until after the notice of intent to file lien claim was delivered to Miller on August 6, 1973.

On August 6, 1973, Kruse's secretary arranged for Bonded Messenger Service to deliver the notice of intention to file claim for lien to Miller's corporate offices at 4000 West State Street in Milwaukee, and to secure and return a signed receipt therefor. The messenger left the envelope containing the signed notice with Betty Jane Jaeger, the receptionist in the lobby of Miller's general office at that address. Ms. Jaeger signed a receipt for the document reciting "complete delivery received in good condition." Bonded Messenger then returned the signed receipt to Local 494.

Ms. Jaeger is not in charge of Miller's offices nor is she authorized to accept process served by the sheriff or private process servers. She does, however, receive and sign for certified or registered mail. She testified that, although she had no specific recollection of receiving the August 4 notice, her normal practice would have been to open the envelope and because the document was marked the way it was, refer it to Miller's legal department. At trial, Warren E. Dunn, Miller's corporate secretary and general counsel, produced a copy of the notice taken from the corporate file for "Dietz Electric" maintained in the legal department.

Kruse, on behalf of the union, filed a lien claim on September 6, 1973. The action to foreclose was begun on May 7, 1974. The trial court dismissed the action on May 7, 1976, holding that plaintiff's service of notice of intention to file claim for lien was defective, and that plaintiff had no authority to give Miller notice of intention to file a lien claim on behalf of four of the claimants because their assignments were executed after that notice was delivered.

QUESTION #1: WHETHER DELIVERY BY A MESSENGER SERVICE OF A NOTICE OF INTENTION TO FILE A CLAIM FOR LIEN TO A RECEPTIONIST WHO WAS AUTHORIZED TO RECEIVE A CORPORATION'S REGISTERED MAIL, BUT WHO WAS NOT AUTHORIZED TO ACCEPT SERVICE OF PROCESS FOR THAT CORPORATION, SATISFIES THE SERVICE REQUIREMENT OF SEC. 289.06(2), STATS.?

Sec. 289.06(2), Stats. 1973 states that:

"**289.06. Filing claim and beginning action; notice required before filing; contents of claim document.** . . . (2) No lien may be filed or action brought thereon unless, at least 30 days before timely filing of the lien claim, the lien claimant serves on the owner, personally or by registered mail with return receipt requested, a written notice of intent to file a lien claim. . . . Such notice shall briefly describe the nature of the claim, its amount and the land and improvement to which it relates."

Miller argues, and the trial court agreed, that the service requirement in this section is the same as the requirement for service of process on corporations, stated in sec. 262.06, Stats. 1973. That section requires that service must be on an officer, director, or managing agent of a corporation, or upon someone apparently in charge of the corporate headquarters or offices.

This court has stated many times that the service of a summons in the manner prescribed by statute is a condition precedent to a valid exercise of personal jurisdiction, even though a different method might properly have been prescribed. *Danielson v. Brody Seating Co.,* 71 Wis.2d 424, 238 N.W.2d 531 (1976). *See also:*

*Keske v. Square D. Co.*, 58 Wis.2d 307, 206 N.W.2d 189 (1973), and *Heaston v. Austin*, 47 Wis.2d 67, 176 N.W.2d 309 (1970).

However, the court has also stated that in interpreting a statute prescribing how service is to be made, the court should keep in mind the purpose of the statute and the type of action to which the statute relates. *Big Valley Farms, Inc. v. Public Service Corp.*, 66 Wis.2d 620, 633, 225 N.W.2d 488 (1975). Miller's argument that the service of notice of intention to file claim for lien should be subject to as strict a standard as the standard for service of a summons is not persuasive if one considers the different purposes of the two notice requirements. The purpose of a summons is to give a defendant notice that an action has been commenced against him and is, in most instances, necessary to the court's jurisdiction over the defendant's person. *Lees v. I.L.H.R. Dept.*, 49 Wis.2d 491, 182 N.W.2d 245 (1971) ; *Danielson v. Brody Seating Co., supra.* The purpose of the notice requirement in sec. 289.06(2) is merely to give an owner thirty days warning that a lien claim may be filed against him. The 1967 Legislative Council Note on that section states that the intent was to give an owner an opportunity to avoid adverse effects on the title to his land which the filing of a lien claim could cause. The notice does not in itself institute an action. It is merely a warning that some action may be taken in the future.

In *Burmek v. Miller Brewing Co.*, 2 Wis.2d 330, 86 N.W.2d 629 (1957), the plaintiff was an electrician injured while working on Miller's premises. At that time, the law required that an action to recover damages could not be brought, unless within two years after the event causing the damages, notice of a claim of injury was served on the potential defendant "in the manner required for the service of summons in courts of record."

Burmek's attorney notified Miller of the claim of injury by regular mail. There was no question that Miller had actual notice, or that the notice was sufficient as to form and content. The purpose of the statute was to allow for investigation of facts relating to the injury while they were still accessible, thus preventing the prosecution of stale claims. This court held that "a notice, sufficient in form and content, timely received by mail, referred to [Miller's] insurer, and investigated and acknowledged by the insurer, is a substantial compliance with the statute." *Id.* at 334.

Similarly, the requirement of 289.06(2) that notice be served on the owner personally or by registered mail with return receipt requested is subject to a less stringent standard for service than the requirements for service of a summons. The purpose of the statute was fulfilled by the notice received by Miller. As the court stated in *Novak v. Delavan*, 31 Wis.2d 200, 211, 143 N.W.2d 6 (1966), the court's interpretation of a statute should "preserve a *bona fide* claim where there has been substantial compliance with a statute requiring notice." Here, Kruse did not send the notice by registered mail, as he could have done under the statute. But he did send it by messenger, and received a signed receipt by Betty Jaeger, the same person who would have signed for and received the notice had it been sent by registered mail. This action was in substantial compliance with the notice requirement of 289.06(2) and does not foreclose the claimant's lien action.

QUESTION #2: WHETHER A LOCAL UNION AGENT MAY GIVE NOTICE OF INTENT TO FILE CLAIM FOR LIEN ON BEHALF OF CERTAIN MEMBERS OF THE UNION BEFORE THOSE MEMBERS HAVE ASSIGNED THEIR LIEN CLAIM TO THE AGENT?

The trial court concluded that the notice of intent to file a claim was insufficient as to the four claimants who assigned their claims after the date of delivery of the notice. This assumes that it was necessary for the union through Kruse to be their "assignee" in order to give effective notice.

It is important to distinguish between the notice of intent to file a lien claim and the lien claim itself. Sec. 289.04, Stats. (1973) provides that lien claims are assignable:

> "289.04. **Claims assignable; notice; prior payment.** All claims for liens and right to recover therefor under this subchapter are assignable. Notice in writing of such assignment may be served upon the owner of the property affected and all payments made by him before service of such notice shall discharge his debt to the amount paid. The assignee may file petitions for such liens and may bring an action in his own name to enforce the same subject to the limitations in s. 289.01(5)."

However, sec. 289.04 does not govern the giving of the thirty day notice of intent to file a lien claim. The notice requirement is controlled by sec. 289.06(2), Stats., *supra*.

Walter B. Raushenbush, draftsman of the Construction Lien Law, discussed the notice requirements of sec. 289.06 (2) in Raushenbush, *Wisconsin Construction Lien Law —1974* (Wisconsin Property Law Series, Vol. 3, The Institute Of Continuing Legal Education—Wisconsin):

> "A question has been raised as to whether the lien claimant must sign and serve this notice personally, or whether his agent or attorney may do so. The same question applies to the giving of any required earlier notices under 289.02(2). 289.06(3), below, specifically permits the actual lien claim to be signed by the claimant or by his attorney. Participation at the notice-giving stage should be equally acceptable, even though the statutes do not say so." *Id.* at 203.

■

Nothing in sec. 289.06 (2) requires that Kruse, acting for the union, had to be an assignee in order to effectively give notice on behalf of the eight claimants. The comments on the statute by Professor Raushenbush strongly suggest that the question of assignment is completely immaterial to the giving of notice. We hold that the notice required by sec. 289.06 (2) may be given by an agent or attorney. It is immaterial whether the agent is an assignee. The union here was acting as agent at the time notice was given.

This approach is consistent with a practical construction of the statute in view of its purpose—"to give 30 days' warning to an owner before a lien claim is filed against him, so that he can have an opportunity to avoid the adverse effects on the title to his land and on his credit rating which the filing of a lien claim can cause." Legislative Council Note, 1967 to sec. 289.06 (2).

The course of conduct followed by the Union achieves the purpose of the statute. It is undisputed that the notice of intention to file claim for lien contained the names of the employees on whose behalf Kruse was acting. Miller had an opportunity to settle the claims of the eight workers and thus avoid the adverse effects of a lien on its property.

■

The trial court specifically found that during the calendar year 1973, the eight claimants were members of the Union which was their agent for purposes of securing for them the wages, hours, and terms and conditions of employment specified in the collective bargaining agreement. That the negotiated contract makes specific reference to the role of the Union as agent for the employees for collective bargaining purposes does not bar a conclusion that the union by Mr. Kruse acted as agent for

purposes of giving notice on behalf of the eight lien claimants.

At trial, Mr. Kruse described his duties as follows: "My duties primarily would be to negotiate and police contracts and generally represent all of the members of the union *for whatever they're entitled to, either by contract or by law.*" (Emphasis added.) He also testified that there was an agreement with the individual members as to the recovery and division of proceeds realized from the lien claims. Furthermore, neither Mr. Kruse nor the Union was to receive any portion of the proceeds for bringing the litigation. The Union, however, did bear the legal expenses of the action.

The basis of the lien claims was labor performed by the eight employees under the terms of the collective bargaining agreement for which they were not paid. The Union was acting well within its role of securing for these employees "the wages, hours, and terms and conditions of employment specified in the collective bargaining agreement."

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.