David TROJAN, James Williams, Marion R. Earnest, Shirley P. Wright, Myron R. Utech, Joseph C. Hirsch and John Hunnicutt, Petitioners-Appellants-Petitioners,

v.

BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Respondent.

Supreme Court

*No. 80–597. Argued October 6, 1981.—Decided November 3, 1981.*

(Also reported in 311 N.W.2d 586.)

For the petitioners there were briefs by *John S. Williamson, Jr.,* and *Habush, Habush & Davis, S.C.,* of Milwaukee, and oral argument by *Mr. Williamson.*

For the respondent the cause was argued by *James H. McDermott,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.   This is a review of a decision of the court of appeals affirming a dismissal by the Circuit Court for Dane County, Judge WILLIAM D. BYRNE, of a petition for review of a decision of the Board of Regents of the University of Wisconsin. The circuit court dismissed the petition for review under ch. 227, Stats., on the ground that the service by certified mail was de-

fective. Both the trial court and the court of appeals held the service to be improper because the sender's receipt for certified mail was not postmarked by the postal authorities.

The petitioners constitute a majority of the Departmental Reappointment Committee-Sociology (DRC-S) at the University of Wisconsin-Eau Claire. They voted against reappointing a Professor Davidson for the 1979–80 academic year and against granting him tenure. After a request for reconsideration, the DRC-S again voted not to reappoint Professor Davidson. Professor Davidson appealed this decision to the Faculty Termination Review Committee. This committee found that the DRC-S had been ". . . materially affected by factors prohibited in UWS 3.08 [Wis. Adm. Code] in making its decision. . . ." The review committee recommended to the Chancellor of the University of Wisconsin-Eau Claire that he not follow the decision of the DRC-S. The chancellor then granted Professor Davidson tenure. Petitioners appealed the chancellor's decision to the Board of Regents, which affirmed the grant of tenure.

Petitioners sought review by the Circuit Court for Dane County pursuant to ch. 227, Stats. 1977. They served the petition for review on respondent by certified mail. The mailing was accomplished by obtaining a certified mail form, detaching the sender's receipt, filling it out, and requesting a return receipt. There was no question that the petition for review was served within the thirty-day time period set forth in sec. 227.16(1)(a). However, the circuit court dismissed the petition, holding the service defective because the sender's receipt used by petitioners was hand dated by the senders rather than postmarked by post office personnel.

The method the petitioners chose to send the petition was a method approved by the postal authorities for use in sending an item by certified mail. Postal regulations

provide that a customer can either date and retain the sender's receipt or can bring the receipt to the post office and have it postmarked at the time of mailing. In ruling that petitioners should have obtained a postmark on the receipt instead of simply dating it by hand, the court of appeals concluded that only certified mail with a postmarked sender's receipt would conclusively establish the date of mailing. This is significant because service of a petition for review is complete upon mailing.[1]

Three issues are presented on this review:

1. Does sec. 990.001(13), Stats. 1977, require that a sender's receipt must be postmarked to constitute valid service by certified mail?

2. Was the trial court correct in holding that sec. 227.16(1)(a), Stats. 1977, permitted service by certified mail if the requirements of sec. 990.001(13) are met?

3. Do the petitioners have standing to challenge the action of the Board of Regents ratifying the reappointment and grant of tenure to Professor Davidson?

The petitioners used certified mail to accomplish service of the petition on the Board of Regents. Sec. 227.16 (1)(a), Stats. 1977, sets forth the method of service for review of decisions by administrative agencies. In relevant part it provides:

"(a) Proceedings for review shall be instituted by serving a petition therefor personally or by registered mail upon the agency or one of its officials. . . ."

The petitioners rely on sec. 990.001, Stats. 1977, to justify the use of certified rather than registered mail. This section states:

"990.001 **Construction of laws; rules for.** In construing Wisconsin laws the following rules shall be observed un-

---

[1] *Schroedel Corp. v. State Highway Comm.*, 38 Wis. 2d 424, 429, 157 N.W.2d 562 (1968).

less construction in accordance with a rule would produce a result inconsistent with the manifest intent of the legislature:
"...

"(13) REGISTERED AND CERTIFIED MAIL. Except in s. 345.09, whenever the statutes authorize or require the use of registered mail, and do not require a return receipt of the addressee only, certified mail may be used if a sender's receipt is obtained from the postal authorities and return receipt is requested. If a return receipt signed by addressee only is required, registered mail must be used."

The trial court held that this statute does apply to petitions for review under sec. 227.16(1)(a), Stats. 1977 and, therefore, that certified mail may be used. We agree with this determination, as discussed *infra*. However, the trial court and the court of appeals held that sec. 990.001(13), Stats. 1977, requires a postmarked sender's receipt when using certified mail.

Under the postal regulations, a customer may use certified mail with or without the sender's receipt being postmarked.

Sec. 912.44(d) and (e) of the Domestic Mail Manual of the United States Postal Service (1979) provides:

"d. If a postmarked sender's receipt is desired, the sender must attach the certified mail sticker to the address side of the article and present the article and the completed coupon to the postal employee. If asked to do so, the postal employee will show on the receipt the time the article was accepted for mailing. If given to a rural carrier, he will return the postmarked receipt to the customer.

"e. If a postmarked receipt is not desired, the sender must attach the *certified mail* sticker to the address side of the article, detach his receipt, and mail the article. He must mark his receipt to show the date."

The petitioners followed the procedures set forth in sec. 912.44(e) of the Domestic Mail Manual of the United

States Postal Service. They did obtain a sender's receipt, attached the certified mail sticker to the address side of the article, detached the receipt, marked the date on the receipt and mailed the petition for review. This was all that was required by the literal language of the postal regulation and of sec. 990.001(13), Stats. 1977. The statute is silent regarding the need for a postmarked receipt. Sec. 990.001(13) allows certified mail to be used if ". . . a sender's receipt is obtained from the postal authorities and return receipt is requested." Both these requirements were met by the petitioners.

The respondent concedes that the petitioners did fulfill the literal requirements of sec. 990.001(13), Stats. 1977. The Board of Regents, through its counsel, argues that it is implied, although not explicitly required, that a sender's receipt must be postmarked. It further argues that this requirement must be read into the statute for two main reasons. These reasons were summarized in the decision of the court of appeals:

"A statute should be construed to give effect to every part of it. *Hahner v. Board of Ed. Wisconsin Rapids*, 89 Wis. 2d 180, 189, 278 N.W.2d 474, 478 (Ct. App. 1979). If this part of sec. 990.001(13), Stats., which reads 'if a sender's receipt is obtained from the postal authorities' is to have meaning, it must be interpreted to require a Postmark on the receipt, because a certified mail receipt form or coupon is provided *whenever* certified mail is used. Secondly, the only reason for the legislature to require a sender's receipt if certified mail is to replace registered mail must be to obtain the proof of service benefit of registered mail. That benefit is available only if a postmark is affixed to the certified mail receipt form."

These conclusions, in our opinion, are not entirely correct. First, as petitioners point out, current postal regulations do permit the use of certified mail in some circumstances without the post office providing a certified mail receipt of coupon:

"*Firm Mailing Books*. If three or more letters are mailed at one time, the sender may use mailing books. Forms 3877 which are furnished by the Postal Service without charge, or privately printed firm mailing bills. . . ." Sec. 912.45, Domestic Mail Manual of the United States Postal Service (1979).

Therefore, sec. 990.001(13), Stats. 1977, need not be interpreted to require a postmarked receipt in order for all the language to have meaning.

Secondly, while a postmarked receipt would certainly provide a means of ascertaining the exact date of service, it is not the only means. Counsel receiving service could verify the date of mailing by examining the postmark on the envelope. If the legislature intended to provide this means of proof of service it would have been a simple matter to insert the requirement that the sender's receipt be postmarked.

More importantly, we find respondent's arguments unpersuasive in the face of the strong policies favoring clarity and precision in procedural statutes. In this case, the statute does not require that the receipt be postmarked. The petitioners complied with the explicit requirements of sec. 990.001(13), Stats. 1977. In *Kyncl v. Kenosha County*, 37 Wis. 2d 547, 555–56, 155 N.W.2d 583 (1968), we stated that:

"In the absence of a specific direction in the statute as to who is to be designated the condemnor for service of notice to contest the award, an ambiguity exists. Procedural statutes are to be liberally construed so as to permit a determination upon the merits of the controversy if such construction is possible."

This in no way conflicts with the previous holdings of this court wherein we stated that strict compliance with procedural statutes is necessary to obtain jurisdiction to review administrative agency decisions. *See, e.g., 519 Corp. v. Department of Transportation*, 92 Wis. 2d 276,

286–88, 284 N.W.2d 643 (1979), and *Brachtl v. Department of Revenue,* 48 Wis. 2d 184, 179 N.W.2d 921 (1970). We reiterate that strict compliance with procedural statutes is necessary. A companion rule is that the statutes must clearly set forth the procedural requirements. To cut off petitioners' right to a review of the Board of Regents' decision when the petitioners complied with the literal language of the service requirement in sec. 990.001 (13), Stats. 1977, would be extraordinarily harsh. If the legislature intends that the sender's receipt be postmarked, then it should make this an explicit requirement of the statute. We hold the service of the petition by certified mail without a postmarked sender's receipt complied with the statute and was therefore adequate.

The respondent maintains that the legislative history of sec. 227.16 (1) (a), Stats. 1977, shows a clear intent that service be limited to personal service or registered mail. Both the trial court and the court of appeals disagreed, holding that certified mail was permissible service if it complied with the requirements of sec. 990.001 (13). We agree with the trial court's interpretation of the legislative history and hold that certified mail was appropriate under sec. 227.16 (1) (a), as it existed under the 1977 statutes. This is now largely a matter of concern only for this case, since the legislature amended the statutes in 1979 to provide for certified rather than registered mail under sec. 227.16 (1) (a).

Prior to 1975, sec. 227.16, Stats., required personal service or registered mail service on both the agency and the parties who appeared before the agency. In 1975 the legislature amended ch. 227 to provide that service on the parties could be accomplished by either personal service, certified mail, or by first class mail when service is timely admitted in writing. However, the legislature left intact the requirement that service be either

personal or by registered mail upon the agency or its representative.

Respondent claims that arguably, certified mail would have been proper service on either the parties or the agency before 1975, due to sec. 990.001(13), Stats. But since the legislature changed sec. 227.16 to explicitly allow certified mail service on the parties, but failed to make a similar change in the service requirement for agencies, respondent finds a clear legislative intent that service on an agency could only be performed personally or by registered mail. This legislative intent thus would make sec. 990.001 inapplicable because it provides that the rules of construction contained therein do not apply when they "would produce a result inconsistent with the manifest intent of the legislature."

We find the petitioners' interpretation of the legislative history to be more persuasive. The petitioner argues that no clear intent to change the service requirements can be attributed to the legislature when it did not change the statutory language. Procedural statutes must be clear and precise in their requirements. The more reasonable interpretation of the 1975 amendments to sec. 227.16, Stats. is that, because it did not change the requirements for service upon an agency, the legislature will be deemed to have intended that agencies could continue to be served by registered mail or by certified mail if the requirements of sec. 990.001(13) are met. Therefore we conclude the trial court was correct insofar as it held that sec. 990.001(13) did apply to sec. 227.16(1) so that service was not limited to registered mail.

As a part of the motion to dismiss, the respondent alleges that the petitioners have no standing to seek review under ch. 227, Stats. This issue was not decided by the trial court nor the court of appeals.

In order to have standing, petitioners must show a direct effect on their legally protected interests.[2] The interest alleged to have been infringed by the respondent's action was the petitioner's right to vote on whether to recommend Professor Davidson for tenure. We conclude this was an area in which petitioners did have a legally protected interest. Sec. UWS 3.06(1)(a) of the Wisconsin Administrative Code, entitled *Renewal of appointments and granting of tenure,* states that: "Appointments may be granted only upon the affirmative recommendation of the appropriate academic department, or its functional equivalent, and the chancellor of an institution. . . ."

Under the rules adopted by the University of Wisconsin-Eau Claire pursuant to sec. UWS 3.06, the tenured members of the Departmental Reappointment Committee have the responsibility for submitting a recommendation on whether to reappoint nontenured faculty members. The committee had two principal issues before it: Whether to recommend the reappointment of Professor Davidson to probation status and, if so, whether to recommend tenure. It voted not to reappoint Professor Davidson in his probationary status and thus it also denied tenure. However, the chancellor, in effect, overruled the commission's decision and granted Professor Davidson tenure. The petitioners argue that this nullifies their votes, rendering them meaningless, just as if they had been prevented from voting in the first instance and that their legal right to participate in the tenure granting process has been usurped by the chancellor's action.

The petitioners' position is further fortified by the statutorily recognized concept of faculty self governance. Sec. 36.09(4), Stats. 1977, provides:

"**Faculty.** The faculty of each institution, subject to the responsibilities and powers of the board, the presi-

[2] *Wisconsin's Environmental Decade, Inc. v. PSC,* 69 Wis. 2d 1, 9, 230 N.W.2d 243 (1975).

dent and the chancellor of such institution, shall be vested with responsibility for the immediate governance of such institution and shall actively participate in institutional policy development. As such, the faculty shall have the primary responsibility for academic and educational activities and faculty personnel matters. The faculty of each institution shall have the right to determine their own faculty organizational structure and to select representatives to participate in institutional governance."

The respondent contends that petitioners lack standing because they were a part of the administrative decisional process and lack standing to challenge the ultimate decision reached in that process. The respondent relies on *Mortensen v. Pyramid Savings & Loan Asso.*, 53 Wis. 2d 81, 191 N.W.2d 730 (1971), and argues that one who is part of the decision-making chain is not a "person aggrieved" and "directly affected." *Mortensen* involved a denial by the commissioner of savings and loan of an application for a branch savings and loan office. When his decision was reversed by the Savings and Loan Review Board, the commissioner petitioned the circuit court for a review of the board's decision. His petition was dismissed on the ground that he was not a "person aggrieved" and "directly affected" as required for standing.

The respondent contends that the present case is directly analogous to *Mortensen* and that petitioners were merely the initial decision-makers in the administrative decision-making process. If this is correct, the petitioners would lack standing. However, the petitioners claim that the chancellor exceeded his authority in granting tenure without their approval. The petitioners argue that a professor may not be granted tenure without an affirmative decision by the DRC-S, as provided in sec. UWS 3.06, *supra.* Viewing the case in this light, the role of the petitioners becomes much different than merely the initial decision-maker in the administrative process. In *Mortensen,* the administrative process was structured so that the commissioner made the initial decision and the

review board had the right to reverse his decision if it disagreed with him. The commissioner was not a final decision-maker. *Mortensen, supra,* at 53 Wis. 2d 85–86.

The difference in this case is that petitioners believe that, in effect, they are the final decision-makers if they decide against granting tenure. They allege that a professor may not be granted tenure if the appropriate faculty committee votes against him or her. The faculty does not have the final decision as far as granting tenure because the chancellor must also recommend it. But they allege that the chancellor has no power to overrule their negative recommendation and grant tenure.

Thus petitioners contend that this is a different kind of administrative decision-making process than was involved in *Mortensen,* and that the chancellor does not have the authority to reverse their negative recommendation on a grant of tenure. The decision-making process functioned properly in *Mortensen,* while in this case the petitioners allege that the chancellor's action perverted the process. Whether petitioners are correct in their assertions will determine the substantive outcome of the case. It is sufficient for purposes of standing that they have alleged a denial of their legally protected rights. These allegations are sufficient to distinguish this case from *Mortensen.* Petitioners have alleged an infringement of their legally protected right to deny tenure and therefore do have standing to challenge the respondent's action.

*By the Court.*—Reversed and remanded to the trial court for proceedings on the merits.

ABRAHAMSON, J., took no part.