Rob TROUTMAN, Plaintiff-Appellant,

v.

FMC CORPORATION, a foreign corporation,
Defendant-Respondent,†

BOLENS CORPORATION, a Wisconsin corporation, First
Wisconsin National Bank, a national bank, and First
Wisconsin Finance Corporation, and Charles Harp
and Richard Kreckel, Defendants.

Court of Appeals

*No. 83–374. Submitted on briefs September 22, 1983.—
Decided October 26, 1983.*
(Also reported in 340 N.W.2d 581.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiff-appellant the cause was submitted on the briefs of *Charles W. Oppitz,* of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *Robert L. Mann* of *Kohner, Mann & Kailas, S.C.,* of Milwaukee.

Before Scott, C.J., Voss, P.J., and Brown, J.

BROWN, J.   A roofing subcontractor, Rob Troutman, appeals from several rulings of the trial court which effectively dismissed FMC Corporation, the owner of the building in question, as a party to the action. At the base of this action is an attempt by Troutman to recover the contract price of $37,200 for work done on FMC's roof by lien foreclosure. Although Troutman's notice to FMC was defective, no determination was made by the trial court, pursuant to sec. 779.02 (2) (e), Stats., as to whether the insufficiency of the notice misled or deceived FMC. Therefore, we reverse the trial court's decision and remand the case for a hearing on this issue.

During 1981, FMC Corporation decided that its roof was in need of patchwork and repair. Charles Harp, the plant engineer for the manufacturing department, was put in charge of obtaining bids from area contractors for this job. Harp ultimately recommended a general contractor, TRC Co., operated by Richard Kreckel. Kreckel, in turn, hired the Troutman Roofing Company to do the roofing work. Troutman supplied all of the materials and labor for the job.

Apparently, the relationship between Harp and Kreckel was a spurious one. Without FMC's or Troutman's knowledge, Harp and Kreckel had agreed that Harp would recommend Kreckel's company, and the two of them would split the profits.

Work on the roof was completed on or about November 9, 1981. FMC did pay TRC Co. for the work performed, but TRC Co. never paid Troutman the amount owed of $37,200. On December 1, Troutman met with another FMC employee (Harp was fired in October) to discuss payment. Troutman handed the employee a single copy of a "Notice of Intention to File Claim for Lien." Another notice was received approximately one week later by registered mail.

Troutman instituted an action against Kreckel, Harp and FMC. Judgment was granted against Kreckel and Harp. With respect to the claims against FMC,[1] the trial court dismissed the mechanic's lien foreclosure claim holding: (1) the notice Troutman had provided did not meet the requirements of sec. 779.02(2)(b), Stats., and (2) Troutman was not exempt from the notice requirement to preserve his lien rights. On charges that FMC was legally responsible for the fraudulent acts of Harp, the court granted summary judgment in favor of FMC. Finally, the court denied the plaintiff's request to amend his pleadings to include a cause of action for the negligent hiring and retention of an employee by FMC.

The major thrust of Troutman's appeal centers on the validity of his mechanic's lien on FMC's property. Our first inquiry is whether the notice Troutman gave FMC was sufficient under sec. 779.02(2)(b), Stats. We agree with the trial court that it was not.

---

[1] The court's determinations on three other causes of action against FMC have not been appealed and, therefore, are not considered.

Section 779.02(2)(b), Stats., states that two signed copies of the notice shall be given within sixty days after first furnishing labor or materials. The notice must contain: (1) the date on which labor or materials were first furnished, and (2) the legal description, street address or other clear description of the real estate. *Id.* Troutman's notice failed to give the date on which labor or materials were first furnished and is, therefore, defective.

Troutman is correct in his assertion that the *form* of the notice does not have to conform with the suggested statutory language. However, his notice failed to comply with a substantive requirement.

FMC argues that this failure to follow the requirements of sec. 779.02(2)(b), Stats., is fatal. This assertion is not entirely correct, however, Section 779.02(2) (e) explains the procedure to be followed where there is a deficiency in the notice. It states: "[i]f the owner . . . complains of any insufficiency of any notice, the burden of proof is upon the owner . . . to show that he or she has been misled or deceived by the insufficiency." It is clear from the record that the trial court did not consider whether the failure to give the date on which the labor or materials were first furnished in any way deceived or misled FMC. Therefore, we remand the case back to the trial court for a hearing on the effect of the insufficiency of the notice.[2]

If FMC does show the defective notice is prejudicial,[3] Troutman strongly asserts that the roofing work per-

---

[2] Troutman also addressed the sufficiency of the notice under sec. 779.06, Stats. The trial court's decision is unclear as to whether he considered the notice insufficient under this section as well. However, our independent review of the record shows that Troutman's notice did comply with sec. 779.06(2) requirements.

[3] Although the decision to reverse is dispositive of this appeal, we discuss the remaining issues for judicial economy in the event

formed constitutes an "improvement" as defined in sec. 779.01(2)(c), Stats., and, therefore, is exempt from the notice requirement under sec. 779.02(1)(c).

In ascertaining the limits of the scope of the word "improvement," we must first look to the statutory definition itself in sec. 779.01(2)(c), Stats.

> "Improve" or "improvement" includes any building, structure, erection, fixture, demolition, alteration, excavation, filling, grading, tiling, planting, clearing or landscaping which is built, erected, made or done on or to land for its permanent benefit. This enumeration is intended as an extension rather than a limitation of the normal meaning and scope of "improve" and "improvement."

Nowhere in the statute is the word "repair" found.

The ordinary and accepted meaning of a word can be established by reference to a recognized dictionary. *Department of Natural Resources v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286, 289 (1982). Webster's Third New International Dictionary defines "repair" as "fix" or "to restore by replacing a part or putting together what is torn or broken." This word is commonly used to describe a replenishing of the status quo.

A close look at the statutory descriptions reveals that an "improvement" is something more than a mere replenishing of the status quo. "Building, structure, erection, fixture, alteration, filling, tiling and planting" all connote an "adding on" or development of an integral part of a structure. "Demolition, grading, clearing and landscaping" describe a "tearing down" and "clearing away" of a structure or land. These words clearly go beyond a replenishing of the status quo.

that the trial court should find the defect in the notice prejudicial to FMC.

Troutman places heavy reliance on this court's opinion of *Sullivan Brothers, Inc. v. State Bank of Union Grove,* 107 Wis. 2d 641, 321 N.W.2d 545 (Ct. App. 1982), which expressly approved a broad construction of the exemption statute to support his position that his work was an alteration of the roof. However, Troutman's reliance on the *Sullivan* case is misplaced. This court in *Sullivan* held that the remodeling of a bank building was an *alteration* of the structure and, therefore, exempt as falling within the statutory definition of "improvement." *Id.* at 645, 321 N.W.2d at 547. An alteration makes something significantly different without changing it into something else. Again, this goes beyond a mere "fixing up" or "repair" of the bank building.

While the statute does say the enumeration "is intended as an extension . . . of the normal meaning and scope" of the word "improvement," that does not mean we have the authority to *change* its meaning. This is a case involving the *repair* or "fixing up" of a roof. If the legislature had intended that repairs be included in the definition of "improvement," it would have been a simple matter for it to do so.

Troutman also alleges that his company was the victim of a conspiracy between Harp, FMC's employee and Kreckel, the general contractor, to defraud Troutman Roofing Company of their earnings. The trial court ruled that there were no facts supporting the conspiracy of fraud allegations and granted FMC's motion for summary judgment. Upon review, this court must apply the standards set forth in sec. 802.08, Stats., in the same manner as the trial court. *Heck & Paetow Claim Service, Inc. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980).

The record supports the trial court's interpretation that there was no dispute of the facts. The affidavit in opposition to the motion for summary judgment states

several times that Harp and Kreckel's various agreements were to obtain contracts, and "any monies received *above and beyond the amount paid to the subcontractors* were split evenly by Harp and Kreckel." (Emphasis added.) In specifically addressing the FMC situation, the affidavit states, "As in their previous joint ventures, Harp and Kreckel would split the profit. This profit was to be the difference between the contract price, and the amount that Kreckel and Harp would have to pay a subcontractor to perform the work." Troutman destroys his own argument by admitting in his affidavit and in his brief on appeal that the evidence established an agreement between Harp and Kreckel, not to steal Troutman's earnings, but to obtain a construction contract from FMC and split the excess profits between them.

Finally, Troutman claims the trial court erred in failing to allow him to amend his complaint to include a cause of action for the negligent hiring and retention of Harp by FMC. It is within the trial court's discretion to allow or refuse amendments to pleadings, and this court will not reverse that decision unless the trial court clearly abused its discretion. *Leciejewski v. Sedlak*, 110 Wis. 2d 337, 351, 329 N.W.2d 233, 239 (Ct. App. 1982). There was no abuse of discretion in the denial of the plaintiff's motion.

In denying this motion, the court's order stated as its basis that the plaintiff did not state facts sufficient to give rise to a cause of action for hiring and/or retention of the employee. The affidavit signed by Troutman's attorney indicated that Harp admitted his criminal involvement with Richard Kreckel on or about January 19, 1983. The affidavit states no other evidentiary facts, merely conclusions. Mere legal conclusions are insufficient to state a cause of action. *Automatic Merchandising Corp. v. Nusbaum*, 60 Wis. 2d 362, 371, n 13, 210 N.W.2d 745, 750 (1973).

The case was already a year old at this point. Summary judgment had been granted against the plaintiff on the balance of his case against FMC, and the "new information" contained in the affidavit did little more than acknowledge that Harp had engaged in illegal activities while employed by FMC. This admission by Harp several months after he was fired does nothing to support a claim that FMC *knew or should have known* that Harp was "incompetent, habitually negligent or otherwise unfit"[4] while employed by FMC. Troutman states no reasons, and we can find none, for finding that the court abused its discretion in denying Troutman's motion.

*By the Court.*—Judgment and order reversed and remanded with directions.

[4] *See generally* 57 C.J.S. *Master and Servant* § 559 (1948).