Mark MURPHY, and Jean Murphy, Plaintiffs-Appellants,

v.

Paul DROESSLER, d/b/a Stoughton Masonry, Defendant-Third Party Plaintiff-Respondent,

v.

CONCO CONCRETE CONSTRUCTION, INC., Third Party Defendant-Respondent.

Court of Appeals

*No. 94–0061. Submitted on briefs September 14, 1994.—Decided October 20, 1994.*

(Also reported in 525 N.W.2d 117.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Randall J. Andersen* of *Kay & Eckblad, S.C.* of Madison.

For the defendant-third party plaintiff-respondent, Paul Droessler, d/b/a Stoughton Masonry, the cause was submitted on the brief of *John A. Kassner* of *Wendel & Center* of Madison.

For the third party defendant-respondent, Conco Concrete Construction, Inc., the cause was submitted

on the brief of *Richard J. Ward* of *Stern, Skiles & Ward* of Madison.

Before Eich, C.J., Sundby and Vergeront, JJ.

VERGERONT, J. Mark and Jean Murphy appeal from an order dismissing their action to obtain clear title on their newly constructed residence. The trial court granted the counterclaims of Paul Droessler, d/b/a Stoughton Masonry (Droessler), and Conco Concrete Construction, Inc. (Conco) for foreclosure of their construction liens on the property. The issue is whether Droessler and Conco properly served construction lien notices pursuant to § 779.02(2)(b), STATS. We conclude the notices did not meet the statutory requirements because they were not served on the Murphys by registered or certified mail, return receipt requested, and the construction liens are therefore invalid. Accordingly, we reverse the order of the trial court.

## BACKGROUND

Most of the facts concerning the two claims for construction liens are not disputed. Schuchardt Construction Corporation (Schuchardt Construction) was the general contractor for the construction of the Murphys' new home. Droessler entered into a subcontract with Schuchardt Construction for the masonry work. Droessler delivered the first materials to the site on May 17, 1991; first began work on June 4, 1991; and last worked on the job on August 19, 1991. Droessler submitted three draw requests to Schuchardt Construction: one dated May 20, 1991, for $10,000; one dated June 19, 1991, for $15,000; and one dated August 5, 1991, for $29,136. On July 1, 1991, Schuchardt Con-

422

struction paid Droessler $15,000, and Droessler signed a partial waiver of construction lien (partial lien waiver) and a contractor's affidavit. This was the only draw Droessler received.

Conco entered into a subcontract with Schuchardt Construction for the concrete flatwork. The first materials and labor were supplied on May 10, 1991, and the initial concrete work was completed on May 14, 1991. Conco was paid in full for this work on June 3, 1991, at which time it executed a partial lien waiver and a contractor's affidavit. Conco began work on the second phase of the concrete flatwork on July 10, 1991. Additional work was agreed upon on August 6, 1991. This work was done between August 10 and August 14, 1991.

Upon becoming aware that Schuchardt Construction was not paying subcontractors, Conco obtained a post-office address for Jean Murphy from Schuchardt Construction. Conco sent a construction lien notice to that address by certified mail, return receipt requested, on September 3, 1991, but this was returned unclaimed. Conco again contacted Schuchardt Construction and learned that an address for Jean Murphy at 2842 Cimarron Trail, Madison, had just been obtained. Conco sent the same notice by certified mail, return receipt requested, to this address on September 9, 1991, and Ms. Murphy signed for this mailing on September 10, 1991.

Schuchardt Construction and its principal, Michael Schuchardt, each filed Chapter 7 petitions for bankruptcy. Criminal charges were filed by the state against Michael Schuchardt in connection with his activities on the Murphy residence.

The Murphys' complaint named Droessler as a defendant and alleged that he failed to comply with the

notice requirements of § 779.02(2), STATS.[1] They requested an order that Droessler's lien be declared void and that he satisfy the claim for the lien he filed; they also requested an award of actual and punitive damages. Droessler brought Conco in as a third party defendant. Droessler's and Conco's counterclaims against the Murphys each alleged unjust enrichment, a valid lien and sought the amounts due to satisfy the liens.

Michael Schuchardt, on advice of counsel, refused to testify. The trial court granted Droessler's request for a bifurcated trial on the ground that the construction lien claims (as opposed to the unjust enrichment

---

[1] Section 779.02(2)(b), STATS., provides in part:

> Every person other than a prime contractor who furnishes labor or materials for an improvement shall have the lien and remedy under this subchapter only if within 60 days after furnishing the first labor or materials the person gives notice in writing, in 2 signed copies, to the owner either by personal service on the owner or authorized agent or by registered mail with return receipt requested to the owner or authorized agent at the last-known post-office address. The owner or agent shall provide a copy of the notice received, within 10 days after receipt, to any mortgage lender who is furnishing or is to furnish funds for construction of the improvement to which the notice relates. The notice to the owner shall be in substantially the following language, with blanks accurately filled in: "As a part of your construction contract, your contractor or builder has already advised you that those who furnish labor or materials for the work will be notifying you. The undersigned first furnished labor or materials on . . . . (give date) for the improvement now under construction on your real estate at . . . . (give legal description, street address or other clear description). Please give your mortgage lender the extra copy of this notice within 10 days after you receive this, so your lender, too, will know that the undersigned is included in the job."

The complaint also alleged a violation of § 779.06(2), STATS., which requires a notice of intent to file a lien claim before a lien claim is filed with the clerk of court. The parties agree that the notice and filing requirements of § 779.06 were met.

claims) could be resolved without Michael Schuchardt's testimony. The trial on the lien claims was to the court. The court concluded that the partial lien waivers and contractor's affidavits signed by Droessler and Conco constituted substantial compliance with the notice requirements of § 779.02(2)(b), STATS., and if there were any insufficiencies in the form of the notices, the Murphys were not misled. The court granted foreclosure on the liens and also ordered that the Murphys were entitled to the payments Droessler was receiving under an agreement with Michael Schuchardt.

■■■ The findings of fact made by the trial court will not be set aside unless clearly erroneous. Section 805.17(2), STATS. However, the construction of a statute and its application to a known set of facts is a question of law that this court reviews *de novo*, without deference to the trial court's conclusion. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985).

Section 779.01(3), STATS., gives persons who supply labor or materials for an improvement to real estate a lien on the land, provided they comply with § 779.02, STATS. With certain exceptions not applicable here, § 779.02 requires that the furnisher of labor or materials give notice within sixty days after furnishing the first labor or materials. The section provides that the notice shall be in "substantially the following language," and sets forth the contents of the notice. The notice must be "in writing, in 2 signed copies, to the owner either by personal service on the owner or authorized agent or by registered mail with return receipt requested to the owner or authorized agent at the last-known post-office address." Section 779.02(2)(b). The statutory requirement of registered

425

mail is met by certified mail if a sender's receipt is obtained from the postal authorities and return receipt is requested. Section 990.001(13), STATS.;[2] *Trojan v. Bd. of Regents*, 104 Wis. 2d 277, 280-85, 311 N.W.2d 586, 587-90 (1981). There are thus three components to the requirements for the notice: time, contents and manner of service.

## DROESSLER'S NOTICE

Mary Cardin, an employee of Schuchardt Construction, testified that she mailed the partial lien waiver and contractor's affidavit signed by Droessler to Jean Murphy on July 15, 1991. She knew she mailed it then because the date is handwritten on her copy, and it was her practice to note the date of mailing in that way. July 15 is fifty-nine days from Droessler's first delivery of materials. Ms. Murphy testified that she did not receive these documents until the middle of August.

The trial court considered the conflicting testimony of Ms. Cardin and Ms. Murphy, chose to credit Ms. Cardin's testimony, and found that she mailed the documents on July 15. The Murphys do not challenge this finding. However, they argue that Ms. Cardin did not send the partial lien waiver or the contractor's affi-

---

[2] Section 990.001(13), STATS., provides:

> Except in s. 345.09, whenever the statutes authorize or require the use of registered mail, and do not require a return receipt of the addressee only, certified mail may be used if a sender's receipt is obtained from the postal authorities and return receipt is requested. If a return receipt signed by addressee only is required, registered mail must be used.

This statute is applicable because § 779.02(2), STATS., does not require return receipt of the addressee only.

davit to the Murphys by registered or certified mail. Droessler does not claim the documents were mailed by registered or certified mail. Although the trial court did not make a finding that Ms. Cardin sent the documents by regular mail, we conclude that is the only reasonable inference from Ms. Cardin's testimony. Where there is only one reasonable inference to be drawn from the evidence, the drawing of that inference is a question of law. *Vocational, Technical & Adult Educ., Dist. 13 v. DILHR*, 76 Wis. 2d 230, 240, 251 N.W.2d 41, 46 (1977). We find as a matter of law that Ms. Cardin mailed the partial lien waiver and contractor's affidavit signed by Droessler to the Murphys by regular mail on July 15, 1991.

■

The trial court apparently considered that substantial compliance with the service requirements of the statute was sufficient, and concluded that Ms. Cardin's testimony proved substantial compliance. We disagree and conclude that the statute does not permit service by regular mail. The statutory language is specific and clear as to the required manner of service: personal service or registered mail. The statute expressly permits the *contents* of the notice to "substantially" conform to the statutory language, but there is no suggestion in the statute that substantial conformance is permitted for the *manner of service* of the notice.

The trial court and the subcontractors rely on *Troutman v. FMC Corp.*, 115 Wis. 2d 683, 340 N.W.2d 581 (Ct. App. 1983), for their interpretation of § 779.02(2)(b), STATS. In *Troutman*, we considered whether a "Notice of Intention to File Claim for Lien" sent by registered mail to the owner within sixty days of the first work or materials complied with

§ 779.02(2)(b). We concluded that § 779.02(2)(b) does not require that the form of the notice conform to the suggested statutory language, but that it does require the notice to contain: (1) the date on which labor or materials were first furnished; and (2) the legal description, street address or other clear description of the real estate. Since the notice in *Troutman* did not contain the date on which labor and materials were first furnished, we held it was deficient. However, we also held that under § 779.02(2)(e), the deficiency in the notice did not automatically mean the notice was invalid. That section provides that "[i]f the owner . . . complains of any insufficiency of any notice, the burden of proof is upon the owner . . . to show that he or she has been misled or deceived by the insufficiency." Accordingly, we remanded the case to the trial court for a hearing on whether the owner was misled by the deficiency of the notice.

*Troutman* dealt with the contents of the notice, not with the service requirements, which had been met in that case. The decision in *Troutman* was based on the wording of § 779.02(2)(e), STATS., which applies to "insufficiency of any notice." We conclude this section refers to the contents of the notice, not to the manner of service of the notice.

A related section confirms our view that only personal service or service by registered or certified mail on the owner or authorized agent is permitted. Section 779.02(3), STATS., provides:

> Any lien claimant, other than the prime contractor, who fails to give a notice as required by sub. (2)(b) shall have no lien on the land or improvement to which the failure relates. Any claimant who serves a late but otherwise proper notice personally or by registered mail on the owner or authorized

428

agent shall have the lien provided by s. 779.01 for any labor or materials furnished after the late notice is actually received by the owner.

This section reiterates that failure to give notice as required by § 779.02(2)(b) results in no lien. It then makes a specific provision for the effect of a late notice that is "otherwise proper" *and* meets the requirements for personal service or service by registered mail. This section is a limited exception to the time requirements of § 779.02(2)(b), just as § 779.02(2)(e) is a limited exception to the content requirement. There is no suggestion anywhere in § 779.02 that there are any exceptions to the service requirements.

We recognize that the supreme court held in *Kruse v. Miller Brewing Co.*, 89 Wis. 2d 522, 528-29, 279 N.W.2d 198, 200 (1979), that the service requirements of a related statute, § 779.06(2), STATS.,[3] should be interpreted in a less stringent manner than the requirements for service of a summons. Section 779.06(2), like § 779.02(2)(b), STATS., requires service of the notice "on the owner, personally or by registered mail with return receipt requested." In *Kruse*, the contractor had personally served the receptionist employed by the corporate owner, as evidenced by a signed receipt. The owner argued that the requirements for service of process on corporations under § 262.06, STATS., 1973 (now § 801.11, STATS.) applied. Under that statute, personal service had to be made on an officer, director, or managing agent of a corporation, or upon someone apparently in charge of the office. The receptionist was none of those. But, as the court noted, she was authorized to sign for registered and certified

---

[3] At the time of the *Kruse* decision, § 779.06(2), STATS., was numbered § 289.06(2), STATS., 1973.

mail and would have signed for the registered mailing had the contractor utilized the other service option under the statute. Under these circumstances, the court found substantial compliance with § 779.06(2). *Id.* at 529, 279 N.W.2d at 200-01.

We conclude *Kruse* does not permit service by regular mail to substitute for an express statutory requirement of registered mail. In the absence of express statutory language as to how personal service of a notice on a corporation is to be made, the *Kruse* court adopted a less stringent approach than for service of process. But, since the statutory language expressly requires registered mail and provides no exceptions, and since another statute expressly permits certified mail in lieu of registered mail, we are not at liberty to permit regular mail instead of either registered or certified mail.

Droessler argues that under § 801.14(2), STATS., documents served by mail are deemed served on the date mailed. However, that statute applies to documents that are required to be served on parties to court actions. It does not override the specific service requirements for notice of construction liens in § 779.02(2)(b), STATS. *See Gottsacker Real Estate Co. v. State*, 121 Wis. 2d 264, 269-70, 359 N.W.2d 164, 167-68 (Ct. App. 1984).

Our interpretation of § 779.02(2)(b), STATS., is supported by the legislative history of that section.[4] Prior

---

[4] Where, as here, the language of a statute is plain on its face, we may not use legislative history to establish ambiguity; but we may use legislative history to reinforce and demonstrate that a statute, when viewed historically, is indeed unambiguous. *State v. Martin*, 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900, 905 (1991).

to 1967, § 289.02, STATS., the predecessor to § 779.02, provided for personal service on the owner or authorized agent or "by mailing" the notice to the owner or authorized agent. A comprehensive revision to the construction lien laws occurred in Laws of 1967, ch. 351. Professor Walter Raushenbush was the project research director for the Wisconsin Legislative Council's Insurance and Banking Committee Advisory Committee on the construction lien law. He specifically invited comment on whether notice should be by ordinary first class mail, with return address shown, or by registered or certified mail. The advantage of the latter two methods, he pointed out, was that they furnished proof of sending and receipt and warned "the recipient of the solemnity of the contents."[5] The Insurance and Banking Committee of the Legislative Council decided to require certified mail with return receipt because it provided proof of service.[6] The statute as actually passed required registered mail, return receipt requested, not certified. This history indicates an intent to permit service by mail only if it is by registered or certified mail.

Droessler argues that he complied with § 779.02(2)(b), STATS., because the partial lien waiver and contractor's affidavit he signed were given to Ms. Cardin, an employee of Schuchardt Construction. The trial court found that Ms. Murphy had given Schuchardt Construction the contractor's affidavit

---

[5] Legislative Reference Bureau, Fifth Memorandum by Walter Raushenbush to the Insurance and Banking Committee of the Wisconsin Legislative Council on possible revisions of construction lien laws, January 12, 1967.

[6] Minutes of the Insurance and Banking Committee Advisory Committee on the Construction Lien Law, Legislative Council, February 3, 1967.

forms and requested that they be used with the subcontractors. Therefore, Droessler argues, Schuchardt Construction was the Murphys' authorized agent for purposes of the personal service requirement of § 779.02(2)(b). When Droessler signed the partial lien waiver and the contractor's affidavit and handed them to Ms. Cardin, he argues, personal service on the Murphys' authorized agent occurred.

Except for the trial court's finding as to who prepared the contractor's affidavit, Droessler does not cite the record to show any factual support for a finding that Schuchardt Construction was the Murphys' authorized agent for purposes of service of the notice required by § 779.02(2)(b), STATS., nor does he cite any authority for this proposition. We need not consider arguments unsupported by citations to authority or references to the record, and we decline to do so here. *See State v. State ex rel. Campbell*, 156 Wis. 2d 329, 334, 456 N.W.2d 870, 873 (Ct. App. 1990); § 809.19(3)(a) and (1)(e), STATS.

## CONCO'S NOTICE

With respect to Conco, it is undisputed that Conco sent one notice meeting the substantive requirements of § 779.02(2), STATS., by certified mail, return receipt requested, to the Murphys on September 9, and that Ms. Murphy signed for that on September 10. Conco argues that this notice is timely because its second phase of the concrete flatwork did not begin until July 10, 1991.[7] Conco urges us to decide that the sixty-day time period for notice began on that date, rather than

---

[7] Conco does not argue that the notice it sent to the Murphys on September 3 by registered mail, which was returned unclaimed, met either the time or the service requirements.

432

on May 10, the date of first delivering the materials. The trial court found that "Conco's work on the project must be viewed as a whole rather then [sic] two separate projects." We agree with the trial court. Both the first and second phases of the concrete flatwork were contemplated in Conco's initial contract. *McCormick v. Kuhnly*, 26 Wis. 2d 193, 131 N.W.2d 840 (1965), on which Conco relies, addressed a different situation, in which the various deliveries were not made under one contract. However, even in that situation the court held that, in the absence of a break of " *'long and unusual periods of time'* " between the various deliveries, the time period for serving a notice begins to run on the very first date of delivery. *Id.* at 197, 131 N.W.2d at 842 (citation omitted; emphasis in original). Here the first phase was completed on May 14, and the second phase began on July 10. This is not a long or unusual period of time between the two phases, sufficient to trigger a new notice date.

██

Even if a second sixty-day time period began to run on July 10, the September 9 notice is untimely. Sixty days from July 10 is September 8, not September 9. The only exception in the statute for late notices is § 779.02(3), STATS., and that is of no help to Conco because it completed work before this notice was sent. Where a time limit for service is provided in a statute, it is to be strictly construed unless the statute provides an express exception. *See Yotvat v. Roth*, 95 Wis. 2d 357, 361, 290 N.W.2d 524, 527 (Ct. App. 1980); *Renner v. Madison Gen. Hosp.*, 151 Wis. 2d 885, 889, 447 N.W.2d 97, 99 (Ct. App. 1989).

Conco does not dispute the Murphys' contention that the partial lien waiver and contractor's affidavit it signed on June 3 were not sent by registered or certi-

fied mail to the Murphys. The trial court made no finding on how those two documents were transmitted to the Murphys. In the absence of a finding by the trial court, we may search the record for evidence to support the trial court's decision. *Davidson v. Davidson*, 169 Wis. 2d 546, 558, 485 N.W.2d 450, 454 (Ct. App. 1992). Our review of the record discloses that Ms. Cardin testified that it was her practice that "[w]hen I had like several subs had come in already, then I would put them in an envelope, and then I'd mail them [to the Murphys]." Ms. Murphy testified that she saw the partial lien waiver signed by Conco, but there is no testimony as to when she saw it or how or when she received it. We conclude that the only reasonable inference from this evidence is that Ms. Cardin mailed the partial lien waiver and contractor's affidavit signed by Conco to the Murphys by regular mail.

Conco's notice, like Droessler's notice, was not served in compliance with § 779.02(2)(b), STATS. Since § 779.01(3), STATS., makes compliance with § 779.02(2) a prerequisite for a valid lien, neither subcontractor has a valid lien.

*By the Court.*—Order reversed.