Richard SEIDER and Jean Seider, Plaintiffs-Appellants,

v.

Connie O'CONNELL, Commissioner of Insurance, Defendant-Respondent-Petitioner.

Supreme Court

*No. 98–1223. Oral argument September 8, 1999.—Decided June 30, 2000.*

2000 WI 76

(Also reported in 612 N.W.2d 659.)

213

For the defendant-respondent-petitioner the cause was argued by *Paul L. Barnett,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the plaintiffs-appellants there were briefs by *Andrew J. King* and *Lutz, Burnett, McDermott, Jahn & King, LLP,* Chilton and oral argument by *Andrew J. King.*

Amicus curiae was filed by *Noreen J. Parrett, Kristen E. Crisp* and *LaFollette Sinykin, LLP,* Madison for the Wisconsin Insurance Alliance and Wisconsin Association of Mutual Insurance Companies.

¶ 1. DAVID T. PROSSER, J. The Office of the Commissioner of Insurance (OCI) seeks review of a

published decision of the court of appeals, *Seider v. Musser*, 222 Wis. 2d 80, 585 N.W.2d 885 (Ct. App. 1998), reversing a decision of the Circuit Court for Dane County, P. Charles Jones, Judge. The circuit court dismissed the declaratory judgment action of the plaintiffs, Richard and Jean Seider (Seiders), who sought a declaration invalidating Wis. Admin. Code § INS 4.01(2)(e).

¶ 2. The issue presented is whether Wis. Admin. Code § INS 4.01(2)(e) (June, 1999), promulgated by the OCI to clarify Wisconsin's "valued policy law," Wis. Stat. § 632.05(2),[1] is invalid because it exceeds the rule-making authority of the OCI. The OCI also asks the court to address the threshold standard for analyzing statutory ambiguity.

¶ 3. In 1997, the Seiders sued their insurer, Wilson Mutual Insurance Company (Wilson Mutual), seeking recovery of the balance of their policy limits under the valued policy law. After a fire destroyed a building the Seiders used as both a restaurant and residence, Wilson Mutual paid the Seiders the actual cash value of the property. The valued policy law requires insurers to set the amount of loss at the full policy limits when real property "which is owned and occupied by the insured as a dwelling" is wholly destroyed. Wis. Stat. § 632.05(2). Wilson Mutual did not pay the full limits of the policy. Instead, it relied on Wis. Admin. Code § INS 4.01(2)(e) to reject the Seiders' claim for full payment. The administrative rule excludes from the valued policy law "real property any part of which is used for commercial (non-dwelling) purposes other than on an incidental basis." Wis. Admin. Code § INS 4.01(2)(e).

---

[1] All references to the Wisconsin Statutes are to the 1995–96 volumes unless indicated otherwise.

¶ 4. The Seiders thereafter pursued a declaratory judgment action in Dane County Circuit Court to invalidate the administrative rule. The court dismissed the action. It found the term "dwelling" subject to different applications and in need of clarification. The court reasoned that because the legislature charged the OCI with the administration and enforcement of the valued policy law, the agency had authority to interpret Wis. Stat. § 632.05(2) by promulgating Wis. Admin. Code § INS 4.01(2)(e).

¶ 5. The court of appeals reversed. Like the circuit court, the court of appeals found Wis. Stat. § 632.05(2) unambiguous. The court relied on the plain language of the valued policy law and rejected the circuit court's conclusion that a term within an unambiguous statute might require further clarification.

¶ 6. We hold that Wis. Admin. Code § INS 4.01(2)(e) exceeds the statutory authority of the OCI because the administrative rule contradicts Wis. Stat. § 632.05(2). Accordingly, we affirm the decision of the court of appeals.

## FACTS

¶ 7. For purposes of this review, the facts are not in dispute. In April 1995 the Seiders acquired a building and real estate in Kiel, Wisconsin. They used the property to operate a restaurant, the Steinthal Valley Lodge. The Seiders simultaneously occupied part of the building as their residence. They lived at the property continuously and exclusively.

¶ 8. On November 28, 1995, a fire wholly destroyed the building. The fire did not result from any criminal fault on the part of the Seiders or their assigns. Apparently, a crack in the flexible tubing of

the building's gas supply caused the blaze. At the time of the loss, the Seiders carried a Commercial Package Policy issued by Wilson Mutual. The monthly payment amount for the policy was $324.35. The declaration page of the policy identified the insureds as "Richard R. Seider & Jean M. Seider, d/b/a Steinthal Lodge." The policy described the insured premises as a "restaurant located at 22124 Town Line Road, Town of Kiel, Manitowoc County." The policy did not characterize the building as a dwelling, home, or residence.

¶ 9. The Wilson Mutual policy provided a $150,000 limit of liability, subject to all terms of the policy. The policy also indicated that valuation at the time of loss would be based on the actual cash value of the property. After the fire, the Seiders filed a Proof of Loss for the full $150,000 limit, citing Wis. Stat. § 632.05 and describing the building as a "residence and restaurant." Wilson Mutual rejected that claim and instead paid the Seiders $129,053.39, a sum equivalent to the actual cash value of the destroyed property after application of the Seiders' deductible.

## PROCEDURAL HISTORY

¶ 10. Initially, the Seiders filed suit against Wilson Mutual in Manitowoc County, seeking recovery of the policy limits under the valued policy law. The Seiders relied on the valued policy law because they owned and occupied the real property as their dwelling at the time it was wholly destroyed, and the destruction occurred without any criminal fault. Wilson Mutual invoked Wis. Admin. Code § INS 4.01(2)(e), asserting that the administrative rule made the statute inapplicable to the loss because the Seiders used the property for commercial purposes on a regular basis. The trial court stayed the proceedings pending

219

resolution of the Seiders' anticipated challenge to the rule.

¶ 11. In April 1997, the Seiders filed a declaratory judgment action in Dane County Circuit Court against the Commissioner of Insurance. The Seiders relied on Wis. Stat. § 227.40(4)(a) to seek the invalidation of Wis. Admin. Code § INS 4.01(2)(e).[2] They asserted that the OCI had exceeded its statutory authority by promulgating a rule that denies some owner-occupants the legal rights and benefits created under Wis. Stat. § 632.05(2).

¶ 12. The circuit court dismissed the Seiders' complaint and upheld the validity of the rule. The court reasoned that because the OCI was charged with administering and enforcing the valued policy law to achieve legislative intent, the OCI had authority to interpret Wis. Stat. § 632.05(2). Although the court found "that the statute as a whole is clear and unambiguous and the term dwelling should be given its plain meaning," it observed that:

> [E]ven when given its plain meaning, the term "dwelling" is still subject to different applications and needs further clarification. That is why the OCI promulgated Ins 4.01(2). Just because a term needs clarification does not render the entire statute ambiguous. Thus, it is not inconsistent to find that the valued policy law is clear and unambiguous, and to also defer to the OCI's definitions for the term "dwelling."

---

[2] Section 227.40(4)(a) provides: "In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making procedures."

220

Even though the court acknowledged that the administrative rule limits the meaning of "dwelling," it determined that the restriction does not conflict with the statute. The court explored the legislative history of the valued policy law to reach this conclusion, cautioning that "the legislative history was not used as an extrinsic source to assist in interpreting what the court considered to be an ambiguous statute."

¶ 13. The valued policy law applied to *all* real property before its repeal in 1975. In 1979, the legislature reenacted the law in a modified form so that it covered only "real property which is owned and occupied by the insured as a dwelling." Wis. Stat. § 632.05(2). The legislature, the circuit court concluded, intended to apply the valued policy law to properties used as dwellings, not to properties that combined commercial and residential purposes. Thus, the administrative rule's restrictive features matched the legislature's intent "to limit the scope of the statute to dwellings."

¶ 14. The circuit court also remarked that the terms of the insurance policy spoke to the commercial nature of the property. The policy referred to the building repeatedly as a "restaurant" and failed to describe the premises as a dwelling. The court concluded that if the Seiders had planned to use the restaurant as their dwelling, they should have explained that use when the policy was issued.

¶ 15. The court of appeals reversed. *Seider*, 222 Wis. 2d at 80. The court, like the circuit court, found the valued policy law unambiguous. Noting that the ambiguity of a statute hinges on the factual context, the court reasoned that the facts of this case presented no ambiguities because the Seiders occupied part of the insured building as a dwelling, and they did not own or

occupy any other structure as a dwelling during the time the policy was in effect. *Id.* at 86. Judge Vergeront's opinion relied on the plain language of Wis. Stat. § 632.05(2) and held that the dictionary meaning of "dwelling" as a "building or construction used for residence" was not ambiguous when applied to the facts of the Seiders' claim. *Id.* at 87 (citing *WEBSTER'S THIRD NEW INT'L DICTIONARY*, 706 (Unabr. 1993)).

¶ 16. Unlike the circuit court, the court of appeals declined to review the valued policy law's legislative history. Statutory interpretation, the court said, begins by determining whether the language of the statute conveys legislative intent. If the language is not ambiguous, courts do not look beyond the statute for other meanings. *Id.* at 88.

¶ 17. After finding Wis. Stat. § 632.05(2) unambiguous in the context of this case, the court of appeals held that Wis. Admin. Code § INS 4.01(2)(e) conflicts with the statute:

> [T]he plain language of the statute does not suggest that use of a dwelling for additional purposes affects the statute's application. Therefore, a rule that makes the statute inapplicable to a building that an insured owns and occupies as a dwelling on the ground that it is also used for commercial purposes does conflict with the statute and does exceed the authority of OCI.

*Id.* The court of appeals concluded that the Seiders were entitled to a declaratory judgment that Wis. Admin. Code § INS 4.01(2)(e) is invalid.

## STATUTES AND ADMINISTRATIVE RULES

¶ 18. This case requires the court to resolve an alleged conflict between a statute and its interpretive administrative rule. The case presents recurrent questions about how courts approach statutory interpretation as well as the deference they show to administrative agencies.

¶ 19. The statute at issue is the valued policy law, Wis. Stat. § 632.05(2). Section 632.05 is the first section in the subchapter entitled "FIRE AND OTHER PROPERTY INSURANCE." Subsection (2) reads:

> (2) TOTAL LOSS. Whenever any policy insures real property which is owned and occupied by the insured as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

¶ 20. Following the statute's restoration in 1979, the OCI promulgated an administrative rule interpreting the statute. Wis. Admin. Code § INS 4.01 reads in part:

> **Ins 4.01 Interpretation and implementation of s. 632.05(2), Stats. (1)** SCOPE. Section 632.05, Stats., and this section apply to policies issued or renewed on or after November 29, 1979, which insure real property owned and occupied by the insured as a dwelling.
>
> . . .
>
> **(2)** INTERPRETATIONS. . . .
>
> (e) *Combined commercial and residential properties.* A policy insuring real property any part of

which is used for commercial (non-dwelling) purposes other than on an incidental basis is not subject to s. 632.05(2), Stats.

¶ 21. The Commissioner of Insurance is directed by statute to administer and enforce the insurance laws of Wisconsin. Wis. Stat. § 601.41(1). "The commissioner shall have rule-making authority under s. 227.11(2)." Wis. Stat. § 601.41(3). Wisconsin Stat. § 227.11(2)(a) provides that "[e]ach agency may promulgate rules interpreting the provisions of any statute enforced or administered by it, if the agency considers it necessary to effectuate the purpose of the statute." However, "[n]o agency may promulgate a rule which conflicts with state law." Wis. Stat. § 227.10(2). The very statute that confers rule-making authority concludes with the admonition that "a rule is not valid if it exceeds the bounds of correct interpretation." Wis. Stat. § 227.11(2)(a).

¶ 22. The legislature long has recognized the potential for conflict between statutes and administrative rules, and it has authorized declaratory judgments as a means to test the validity of rules. As far back as the early 1950s, the statutes directed courts to scrutinize interpretive rules to determine "the limits of correct interpretation." Wis. Stat. § 227.05(2) (1953–54).

¶ 23. Chapter 227 was revised in 1955,[3] leading to two current statutes. The present authority to challenge rules is located in Wis. Stat. § 227.40. Subsection (4)(a) of this section reads: "In any proceeding pursuant to this section for judicial review of a rule, the court shall declare the rule invalid if it finds that it violates constitutional provisions or exceeds the statutory

---

[3] Chapter 221, Laws of 1955.

authority of the agency or was promulgated without compliance with statutory rule-making procedures." This statute posits three grounds for attacking the validity of a rule.

¶ 24. A second statute, Wis. Stat. § 227.11(2), picks up the "limits of correct interpretation" language from the early 1950s law, except that the phrase now reads "bounds of correct interpretation." Reading these statutes together, a party challenging the validity of an administrative rule on the grounds that the rule "exceeds the statutory authority of the agency" may use Wis. Stat. § 227.11(2) as well as Wis. Stat. § 227.10(2) to articulate the basis for the challenge.

## STANDARD OF REVIEW

¶ 25. This case requires a finely tuned understanding of the standard of review. In *DeBeck v. DNR*, 172 Wis. 2d 382, 386, 493 N.W.2d 234 (Ct. App. 1992), the court of appeals concluded that courts should apply a *de novo* standard of review in "exceeds statutory authority" cases under Wis. Stat. § 227.40(4)(a). We agree.

¶ 26. Resolving an alleged conflict between a statute and an interpretive rule requires statutory interpretation. *Wisconsin Hosp. Ass'n. v. Natural Resources Bd.*, 156 Wis. 2d 688, 705, 457 N.W.2d 879 (Ct. App. 1990). Statutory interpretation is a question of law. *State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999); *Reyes v. Greatway Ins. Co.*, 227 Wis. 2d 357, 364–65, 597 N.W.2d 687 (1999). Here, the agency promulgated an administrative rule to interpret a statute. The rule was a matter of first impression for the agency when it was created in 1981, and only now is it challenged as invalid. Independent review is

the appropriate standard in these circumstances because it preserves the ultimate authority of the judiciary to determine questions of law, seeking to discern and fulfill the intent of the legislature. *Doe v. American Nat'l Red Cross*, 176 Wis. 2d 610, 616, 500 N.W.2d 264 (1993). Our first duty is to the legislature, not the agency. "A rule out of harmony with the statute is a mere nullity." *Plain v. Harder*, 268 Wis. 507, 511, 68 N.W.2d 47 (1955) (citing *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134 (1936)). Even if we accorded the agency that promulgated a rule great weight deference, we would not uphold a rule that directly contravenes the words of a statute. *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 573, 579 N.W.2d 668 (1998) (quoting *Lisney v. LIRC*, 171 Wis. 2d 499, 506, 493 N.W.2d 14 (1992)).

¶ 27. When this court decides questions of law, we benefit from the analyses of both the circuit court and the court of appeals. *Meyer v. School Dist. of Colby*, 226 Wis. 2d 704, 708, 595 N.W.2d 339 (1999). When we decide questions of law about an administrative rule, we benefit from the experience and analysis of the administrative agency that has a duty to execute the law enacted by the legislature. *Nottelson v. ILHR Dep't*, 94 Wis. 2d 106, 115–17, 287 N.W.2d 763 (1980).

## STATUTORY AMBIGUITY

¶ 28. An administrative rule that conflicts with an unambiguous statute exceeds the authority of the agency that promulgated it. *Basic Prods. Corp. v. Department of Taxation*, 19 Wis. 2d 183, 186, 120 N.W.2d 161 (1963); Wis. Stat. § 227.10(2). We therefore

begin our review by considering whether Wis. Stat. § 632.05(2) is ambiguous.

¶ 29. The valued policy law requires insurers to pay the policy limits, not the actual amount of loss, to an insured in certain circumstances:

> Whenever any policy insures real property which is owned and occupied by the insured as a dwelling and the property is wholly destroyed, without criminal fault on the part of the insured or the insured's assigns, the amount of the loss shall be taken conclusively to be the policy limits of the policy insuring the property.

Wis. Stat. § 632.05(2). The OCI maintains that the phrase "which is owned and occupied by the insured as a dwelling" is ambiguous because it does not clearly direct a result in the case of a combined-use property. This ambiguity, the OCI contends, requires the agency to promulgate a rule that harmonizes the ambiguous words of the statute with the intent of the legislature by refining how "dwelling" is defined.

■

¶ 30. A statute is ambiguous if reasonable minds can understand it in more than one way. *Drangstviet v. Auto-Owners Ins. Co.*, 195 Wis. 2d 592, 598, 536 N.W.2d 189 (Ct. App. 1995) (citing *In re P.A.K.*, 119 Wis. 2d 871, 878, 350 N.W.2d 677 (1984)). Occasionally, of course, "clarity and ambiguity are in the eyes of the beholder." *Juneau County v. Courthouse Employees*, 221 Wis. 2d 630, 642 n.8, 585 N.W.2d 587 (1998). We will not find a statute ambiguous simply because either the parties or the courts differ as to its meaning. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 281–82, 548 N.W.2d 57 (1996); *State v. Moore*, 167 Wis. 2d 491, 497 n.6, 481 N.W.2d 633 (1992).

¶ 31. The analysis of statutory ambiguity begins with the language of the statute itself. *Stockbridge Sch. Dist. v. DPI*, 202 Wis. 2d 214, 220, 550 N.W.2d 96 (1996) (quoting *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996)). The valued policy law was enacted in 1874, repealed in 1915, reenacted in 1917, repealed in 1975, and reenacted in 1979. Over the years, we have demonstrated a pattern of giving "the literal meaning of the language of the statute. . .full force." *Gambrell v. Campbellsport Mut. Ins. Co.*, 47 Wis. 2d 483, 488, 177 N.W.2d 313 (1970) (quoting Winfield V. Alexander, *Insurance: The Wisconsin "Valued Policy" Law*, 1934–35 Wis. L. Rev. 249 [hereinafter Alexander, *"Valued Policy" Law*]). Beginning in 1877, this court observed that "[t]he words of this statute are neither obscure, doubtful nor ambiguous as to their meaning, and they therefore afford but little room for interpretation." *Reilly v. Franklin Ins. Co.*, 43 Wis. 449, 454, 28 Am. Rep. 552 (1877).[4]

¶ 32. As a general rule, courts apply the ordinary and accepted meaning of language in statutes, *DNR v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 408, 321 N.W.2d 286 (1982), unless it leads to an absurd result. *State ex rel. Reimann v. Circuit Court for Dane County*, 214 Wis. 2d 605, 622, 571 N.W.2d 385 (1997). This practice complies with legislative directive. *See* Wis. Stat. § 990.01(1).

¶ 33. The 1979 reenactment of the valued policy law added the phrase "owned and occupied by the

---

[4] The law favors continuity. We must interpret the revised statute "in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction." Wis. Stat. § 990.001(7).

insured as a dwelling." This case turns on the interpretation of the word "dwelling." Both the court of appeals and the circuit court applied the ordinary and accepted meaning of "dwelling." Neither court found the valued policy law ambiguous. *Seider*, 222 Wis. 2d at 87. Despite its validation of the agency rule, the circuit court reasoned that "the statute as a whole is clear and unambiguous and the term dwelling should be given its plain meaning." *Memorandum Decision and Order* at 7. The court of appeals relied on the dictionary definition of "dwelling" as "a building or construction used for residence." *Seider*, 222 Wis. 2d at 87 (quoting *WEBSTER'S THIRD NEW INT'L DICTIONARY*, 706 (Unabr. 1993)). The court reasoned that putting property to additional uses does not impact either the dictionary or statutory meaning of "dwelling."

¶ 34. In *Drangstviet*, the court of appeals concluded that "§ 632.05(2), STATS., read as a whole, is clear and unambiguous. Thus, we must determine the legislative intent by giving the words 'occupied' and 'dwelling' their ordinary meaning." 195 Wis. 2d at 599–600. The court then defined "dwelling" as "[t]he house *or other structure* in which a person or persons live; a residence; abode; habitation; the apartment or *building*, or group of buildings, occupied by a family as a place of residence. *Structure* used as place of habitation." *Id.* (quoting *Black's Law Dictionary* 505 (6th ed. 1990)) (emphasis added).

¶ 35. Although this court has not analyzed the meaning of "dwelling" under the current valued policy law, we did examine the term as it applied to a standard fire policy that allowed an additional ten percent coverage for dwellings. In *Trible v. Tower Ins. Co.*, 43 Wis. 2d 172, 186, 168 N.W.2d 148 (1969), the insurer argued that a destroyed lodge was not subject to the

enhanced coverage since "the lodge was never a 'dwelling'. . .it was never occupied." We turned to a dictionary definition and held that the property did qualify because a lodge is "a building or construction used for residence." *Id.* (quoting *Webster's New Int'l Dictionary* (3d ed.)). The lodge's commercial, non-residential character did not alter its status as an insured "dwelling."

¶ 36. In this case, the OCI relies on the non-residential character of Steinthal Valley Lodge to contend that the "dwelling" language is ambiguous. In both its brief and at oral argument, the OCI argued that the valued policy law is ambiguous because it implicitly excludes non-residential properties. In cases in which the insured owns and occupies a combined-use property, the OCI maintains, the ambiguity arises from the difficulty in distinguishing between use of the insured property as a "dwelling" and as a business enterprise.

¶ 37. The OCI's argument that the valued policy law implicitly excludes commercial properties is flawed. In lay terms, the agency's reasoning is an example of inverse logic: We may agree that "if p, then q" is true, but it does not follow that "if not p, not q" is also true. To illustrate, we may say that "if a child is born in Manitowoc, the child is an American citizen," but we would not accept the proposition that "if a child is *not* born in Manitowoc, the child is *not* an American citizen." Here, the OCI has determined that if a building is exclusively residential, it is a dwelling; but if a building is not exclusively residential, it is not a dwelling. The error in this logic is transparent.

¶ 38. The OCI asks us to *infer* an ambiguity by reading an exclusion into the term "dwelling." But the statute does not exclude combined-use dwellings. It does not grant benefits to some dwellings and deny benefits to other dwellings. Nothing in the valued pol-

icy law itself limits the dwelling clause to buildings used exclusively as residences. The statutory language certainly excludes buildings that are not dwellings. It excludes dwellings that are not owned by the insured. It excludes dwellings that are owned by the insured but not occupied by the insured. The language, however, does not exclude any dwellings that are "owned and occupied by the insured." Only the administrative rule makes that exception.

¶ 39. The OCI relies on this implicit exclusion to maintain that the administrative rule is necessary to clarify an ambiguous term. A term, however, "is not ambiguous merely because it is general enough to encompass more than one set of circumstances." *Drangstviet*, 195 Wis. 2d at 599. By promulgating Wis. Admin. Code § INS 4.01(2)(e), the OCI carved out one set of circumstances to which the valued policy law cannot apply. The OCI itself created the exception by eliminating the class of combined-use dwellings.

■

¶ 40. The decision to write an exception into a statute is best reserved for the legislature. *Motola v. LIRC*, 219 Wis. 2d 588, 614, 580 N.W.2d 297 (1998) (Abrahamson, C.J., dissenting). Had the legislature intended to except combined-use properties, it would have done so directly. *See Meyer*, 226 Wis. 2d at 713. Had the OCI not been satisfied with the statute, it should have sought corrective legislation.

¶ 41. Application of the ordinary and accepted meaning of the word "dwelling" as "a building or construction used for residence" does not lead to absurd results. The OCI warns that inclusion of combined-use properties under the valued policy law will prompt business owners who occasionally sleep in their workplaces to pursue the broad benefits of the statute.

This argument stretches credibility. To qualify under the valued policy law, an insured has to own and occupy real property as a dwelling. A "business" cannot occupy a building as a dwelling. To qualify, the insured has to be a person who owns the building, occupies the building, carries the insurance in his or her own name, and makes the building his or her residence, meaning more than a periodic sojourn on an office cot. Incidental use of a building for sleeping does not rise to the level of "occupancy," or taking possession of, a building as "a residence."

¶ 42. Moreover, the application of the valued policy law to the facts of the Seiders' claim does not produce absurd results. This is not a case in which the insureds sought to redeem the policy limits of a costly business in which they occasionally resided. These insureds lived at the property continually and exclusively. Failure to apply the ordinary meaning of the statute, on the other hand, would produce the absurd result of denying the protections of the valued policy law to persons like the Seiders—whether in-home daycare providers or telecommuting business consultants—whose only dwelling also serves a commercial purpose.

¶ 43. The court's analysis begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry. Nonetheless, it is often valuable to examine the statute in context. Context usually refers to the relationship with other statutes. *See Juneau County*, 221 Wis. 2d at 641. Context also can mean factual setting. "Depending on the facts of a case, the same statute may be found ambiguous in one setting and unambiguous in another." *Reyes*, 227 Wis. 2d at 365 (citing *Sauer v. Reliance Ins. Co.*, 152 Wis. 2d 234, 241, 448 N.W.2d 256 (Ct. App. 1989);

*Brandt v. LIRC*, 160 Wis. 2d 353, 368, 466 N.W.2d 673 (Ct. App. 1991)). Permitting the facts of a case to gauge ambiguity simply acknowledges that reasonable minds can differ about a statute's application when the text is a constant but the circumstances to which the text may apply are kaleidoscopic.

¶ 44. This contextual approach is not new to Wisconsin courts. In *Sauer*, the court of appeals observed that the definition of "recreational activity" can vary in different circumstances. *Sauer*, 152 Wis. 2d at 241. We faced that particular dilemma in *Meyer* when our court explored whether a spectator walking on bleachers was engaged in "recreational activity." *Meyer*, 226 Wis. 2d at 710. In *Roehl v. American Family Mutual Insurance Co.*, 222 Wis. 2d 136, 145, 585 N.W.2d 893 (Ct. App. 1998), the court of appeals found that the statute governing renewal of insurance policies on "less favorable terms," although not ambiguous on its face, is ambiguous when applied to situations in which the legislature or the courts limit or reduce coverage. More recently, in *Reyes*, we held that the "when operating a motor vehicle" language in the sponsorship statute is ambiguous when applied factually to a drive-by shooting carried out during vehicle operation. *Reyes*, 227 Wis. 2d at 366.

¶ 45. The OCI relies on two decisions from the court of appeals to argue that the valued policy law is ambiguous. In *Kohnen*, the court concluded that the term "occupied" was ambiguous in the context of whether the valued policy law reached an insured owner who periodically leased a dwelling. *Kohnen v. Wisconsin Mut. Ins. Co.*, 111 Wis. 2d 584, 586, 331 N.W.2d 598 (Ct. App. 1983). In *Drangstviet*, the court found that "occupied" is unambiguous in the context of whether the statute applies to the estate of an insured decedent. *Drangstviet*, 195 Wis. 2d at 599. The OCI

maintains that these divergent holdings about the meaning of "occupied" illustrate that the only reliable way to apply the statute is on a case-by-case basis. Although application of the term "occupied" is not at issue here, we agree with the OCI that context inflects statutory interpretation. We disagree, however, with the proposition that such variation can render the statute universally ambiguous.

¶ 46. A statute is not ambiguous simply because it is general enough to apply in more than one circumstance. *Drangstviet*, 195 Wis. 2d at 599. Nor is a statute ambiguous if the facts of a case make the statute difficult to apply. *State v. Ambrose*, 196 Wis. 2d 768, 776, 540 N.W.2d 208 (Ct. App. 1995) (citing *Lawver v. Boling*, 71 Wis. 2d 408, 422, 238 N.W.2d 514 (1976)). In an earlier analysis of the valued policy law, this court observed that we "cannot suspend the operation of statutes merely because an unexpected result may work out in a particular case." *Reedsburg Farmers Mut. Fire Ins. Co. v. Koenecke*, 8 Wis. 2d 408, 412, 99 N.W.2d 201 (1959) (quoting *Ciokewicz v. Lynn Mut. Fire Ins. Co.*, 212 Wis. 44, 51, 248 N.W. 778 (1933)).

¶ 47. In this case, the valued policy law is not ambiguous. The phrase "which is owned and occupied by the insured as a dwelling" is straightforward. The destroyed building was owned and occupied by the Seiders as a dwelling. They owned and occupied no other property as a residence. As the court of appeals noted, a factual ambiguity might have resulted had the Seiders owned another home or stayed elsewhere temporarily. *Seider*, 222 Wis. 2d at 86–87. Use of the property as a restaurant, however, did not alter its character as the Seiders' dwelling. Had the legislature

intended for the statute to apply only to properties used exclusively as dwellings, it could have inserted more restrictive language.

██

¶ 48. We thus find that the valued policy law is not ambiguous when applied to those combined-use properties that insured owners occupy as their dwelling.

### HISTORY OF WIS. STAT. § 632.05(2)

██

¶ 49. Having concluded that the valued policy law is not ambiguous, we now address the OCI's contention that the statute's legislative history nonetheless renders the law ambiguous. Under the plain meaning rule, courts do not resort to legislative history to uncover ambiguities in a statute otherwise clear on its face. *Kelley Co. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992); *see also Johnson v. County of Crawford*, 195 Wis. 2d 374, 383, 536 N.W.2d 167 (Ct. App. 1995). The OCI urges this court to discard the plain meaning rule in favor of a method of statutory interpretation that permits consideration of extrinsic evidence irrespective of a finding of ambiguity. Even if this court finds the valued policy law unambiguous, the OCI argues, the legislative history will show that the legislature intended to limit the statute's reach by excluding commercial properties.

██

¶ 50. If a statute is unambiguous on its face, this court does not look to extrinsic evidence, such as legislative history, to ascertain meaning. *Reyes*, 227 Wis. 2d at 365. Traditionally, "resort to legislative history is not appropriate in the absence of a finding of ambiguity." *State v. Sample*, 215 Wis. 2d 487, 495–96, 573

N.W.2d 187 (1998) (quoting *State v. Setagord*, 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1977)). This approach to statutory interpretation forms the core of the plain meaning rule.

¶ 51. Although the canon prevents courts from tapping legislative history to show that an unambiguous statute is ambiguous, "there is no converse rule that statutory history cannot be used to reinforce and demonstrate that a statute plain on its face, when viewed historically, is indeed unambiguous." *State v. Martin*, 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900 (1991).

¶ 52. Where a statute unambiguously establishes legislative intent in its plain meaning, we apply that meaning without resorting to extrinsic sources. *Kelley Co.*, 172 Wis. 2d at 247. On occasion, however, we consult legislative history to show how that history supports our interpretation of a statute otherwise clear on its face. *See State v. Hall*, 207 Wis. 2d 54, 84–89, 557 N.W.2d 778 (1997); *see also Murphy v. Droessler*, 188 Wis. 2d 420, 430 n.4, 525 N.W.2d 117 (Ct. App. 1994); *Kerkvliet v. Kerkvliet*, 166 Wis. 2d 930, 942 n.9, 480 N.W.2d 823 (Ct. App. 1992). "When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clean the words may appear on 'superficial examination.' " *Sample*, 215 Wis. 2d at 508 (Abrahamson, C.J., concurring) (quoting *Train v. Colorado Pub. Interest Research Group, Inc.*, 426 U.S. 1, 10 (1976)). This approach assists judicial construction of a statute. *Novak v. Madison Motel Assoc.*, 188 Wis. 2d 407, 416, 525 N.W.2d 123 (Ct. App. 1994). By confirming that our understanding of a law conforms with its

history, we better fulfill our duty of effectuating the legislature's intent.

¶ 53. Although we find the valued policy law unambiguous, we explore the statutory language in its context, subject matter, scope, and history to illustrate fully the legislature's objectives. *Martin*, 162 Wis. 2d at 896–97. To review this background information, we turn to extrinsic sources. Extrinsic aids include materials pertaining to the passage of a statute, historical events that occurred at the time of enactment, and information generated after the statute's passage. *Juneau County*, 221 Wis. 2d at 642–43.

¶ 54. The valued policy law traces its legislative origins to 1874, when Wisconsin became the first state to enact such a statute. Spencer L. Kimball, *Insurance & Public Policy* 240–41 (1960) [hereinafter Kimball, *Insurance & Pub. Policy*]. During the 1870s, the growing number of incendiary fires on overinsured property prompted insurance companies to limit recovery amounts to the policyholder's actual loss. *Id.*; *see also* Herbert J. Baumann, Jr., *Recovery Under the Valued Policy Law* 19-WTR Brief 45 (1990) [hereinafter Baumann, *Recovery Under the Valued Policy Law*]. Legislators subsequently interpreted this restriction as a means by which insurers could avoid the burdens of paying the negotiated policy limits while concurrently enjoying the benefits of full premium payments. Kimball, *Insurance & Pub. Policy*, at 241; Tom Baker, *On the Genealogy of Moral Hazard*, 75 Tex. L. Rev. 237, 261 (1996). The valued policy law was designed to discourage owners from over-insuring property while simultaneously thwarting insurers from collecting excessive premiums.[5] *Gambrell*, 47 Wis. 2d at 488. It

[5] In its first analysis of the valued policy law, this court observed:

was assumed that the law would diminish fraud and prompt insurance companies to issue more realistic appraisals. *Id.* Another purpose of the valued policy law was to eliminate controversy about the amount of loss in the event of property destruction. *Fox v. Milwaukee Mechanics' Ins. Co.*, 210 Wis. 213, 217, 246 N.W. 511 (1933); Baumann, *Recovery Under the Valued Policy Law*, at 45–46.

¶ 55. The valued policy law is the product of a strong public policy position in the legislature. *Gambrell*, 47 Wis. 2d at 487–88 (citing Kimball, *Insurance & Pub. Policy*, at 241). Although the law met initial hostility from both insurance companies and Wisconsin Insurance Commissioners, early attempts to repeal the statute failed. Kimball, *Insurance & Pub. Policy*, at 241–43. The statute has been in almost continuous effect, and courts have interpreted it uniformly since its inception. *See Gambrell*, 47 Wis. 2d at 488 (citing Alexander, *"Valued Policy" Law*, at 248). Our understanding of the law's policy objectives remained unchanged for over one hundred years. *See Gimbels Midwest, Inc. v. Northwestern Nat'l Ins. Co. of Milwau-*

The manifest policy of the statute is to prevent over insurance, and to guard, as far as possible, against carelessness and every inducement to destroy property in order to procure the insurance upon it. Where property is insured above its value, a strong temptation is presented to an unscrupulous and dishonest owner, either to intentionally burn it, or not to guard and protect it as he ought. . . .And insurance companies, too, actuated by motives of gain, or incited by sharp competition in business, take risks, frequently, recklessly and for amounts in excess of the real value of the property insured; which they would be less likely to do if compelled to pay the amount of insurance written in their policies. It is evident that it was to prevent these evils and guard against these mischiefs, that the statute was enacted.

*Reilly v. Franklin Ins. Co.*, 43 Wis. 449, 455–56, 28 Am. Rep. 552 (1877).

*kee,* 72 Wis. 2d 84, 92, 240 N.W.2d 140 (1976) (citing *Gambrell,* 47 Wis. 2d 483; *Fox,* 210 Wis. at 217; and *Reilly,* 43 Wis. at 456).

¶ 56. The public policy mandate of the valued policy law governs judicial interpretation of insurance contracts. Until its 1975 repeal, the statute applied to all real property. Historically, this court prohibited any construction of the law that would result in payment of less than the full policy limit. *Gambrell,* 47 Wis. 2d at 491. Insurers could not avoid full payment through policy exclusions or contractual modifications. Arnold P. Anderson, *Wisconsin Insurance Law* § 6.4 (4th ed. 1998). Parties cannot waive the statutory provisions, even by express contract. *Gimbels Midwest,* 72 Wis. 2d at 92. Provisions that limit the amount of loss must yield to the valued policy law. *Gambrell,* 47 Wis. 2d at 491. The statute thus overrides the clause in the Seiders' Wilson Mutual policy that set the valuation to the actual cash value of the property.

¶ 57. In 1975, the legislature repealed the valued policy law as part of a general revision of insurance contract law. § 10, ch. 375, Laws of 1975. The goal of this reform was to make insurance contracts more uniform and reliable. INTRODUCTORY NOTE, § 41, ch. 375, Laws of 1975. The legislature sought to eliminate statutory provisions that were inconsistent with, or overruled, standard fire policies. INTRODUCTORY NOTE, § 42, ch. 375, Laws of 1975. As a result, the valued policy law was repealed because its provisions conflicted "with the 'actual cash value' language of the insuring clause." *Id.* By way of example, the legislative commentary addressed three specific repealed provisions relating to fire insurance: the valued policy law, a provision on coinsurance, and a provision about the distribution of coverage. *Id.* The commentary described

the latter two statutes as "badly conceived" and "unnecessary," respectively; but it made no similar qualitative assessments about the valued policy law. *Id.* The legislative history makes no reference to the original statute's expansive reach to all real property as a reason for its repeal. The statute was portrayed as an obstacle to uniformity.

¶ 58. In 1977, bills to restore the valued policy law were introduced in both houses of the legislature. 1977 Senate Bill 53 (Senator Sensenbrenner); 1977 Assembly Bill 691 (Representative Kincaid; Senator Krueger). The Assembly bill had 40 authors. The Legislative Reference Bureau (LRB) analysis of each bill stated: "This bill restores a statutory provision that was repealed by chapter 375, laws of 1975, which was a general revision of insurance contract law." Assembly Bill 691 was taken up in the Assembly on September 11, 1977.[6] The Assembly adopted an amendment that inserted the phrase, "which is owned and occupied by the insured as a dwelling," into the proposed law, then passed the bill, 81 to 13. The Senate took up the bill on January 31, 1978, and it adopted an amendment stripping out the Assembly amendment before concurring in the bill. The bill was sent back to the Assembly, where it was referred to a committee and died. The Assembly did not vote on it a second time.

¶ 59. In 1979, Representative Kincaid authored Assembly Bill 85.[7] This bill incorporated the language of the Assembly amendment from 1977, but the LRB analysis of Assembly Bill 85 failed to describe the new language. It said:

---

[6] 1977 *Assembly Bulletin*, p. 339.

[7] 1979 *Assembly Bulletin*, p. 81.

Under this bill, if the insured property is wholly destroyed, without criminal fault on the part of the insured, the amount of the policy is to be taken conclusively as the value of the property when insured and the amount of loss when destroyed. This bill restores a statutory provision that was repealed by chapter 375, laws of 1975, which was a general revision of insurance contract law.

The Assembly Committee on Financial Institutions amended 1979 A.B. 85 to take out the new language before approving the bill, but this amendment was nullified by a substitute amendment adopted on the floor. The substitute amendment survived a rejection motion and then passed on a voice vote. The bill passed 95 to 0, and the Senate subsequently concurred.

¶ 60. The OCI reviews this history and contends that the statute's inability to pass in 1977 and 1979 without the "dwelling" language reveals a "considered and deliberative legislative decision to exclude commercial and other non-residential real estate from the coverage of the statute." Petitioner's Brief at 14–15. This interpretation fails to describe or analyze the motivations and influences at work in the legislative process.[8] The legislative history may just as easily be interpreted as a struggle between legislators who

---

[8] Historically, fire insurance companies have strongly opposed the valued policy law as costly and unfair. They agree that the law makes insurers vulnerable to fraud. According to W.A. Durkin, who represented the Wisconsin Insurance Alliance at a legislative hearing on 1977 Assembly Bill 691, the valued policy law is "an invitation to and a statutory reward for arson. . . .Arson is difficult to detect and hard to prove because 'torch men' are frequently used by arson-inclined insured." *Position Paper*, Wisconsin Insurance Alliance, May 12, 1977. The Wisconsin Insurance Alliance and several other insurance associations and companies opposed reenactment of the bill.

worked to restore the valued policy law in full and legislators who sought to limit its restoration. The words and motivations of the two camps do not appear in the record. What is clear, however, is that the recorded action in the legislature is silent about a legislative determination to exclude combined-use dwellings or to limit the statute's application to properties used "principally" or "exclusively" as dwellings.

¶ 61. The legislature foresaw an expansive application of Wis. Stat. § 632.05(2). Section 600.12(1) now provides: "[u]nless otherwise provided, chs. 600 to 655 shall be liberally construed to achieve the purposes stated therein."[9] The valued policy law articulates no exceptions to this broad mandate. Moreover, it makes no difference what type of policy Wilson Mutual issued to the Seiders. The statute applies "whenever *any policy* insures real property which is owned and occupied by the insured as a dwelling." Wis. Stat. § 632.05(2) (emphasis added). The valued policy law makes no conditions based upon the type of policy the insurer issues.

In the spring of 1977, the Mutual Service Casualty Insurance Company sued Wisconsin Insurance Commissioner Harold Wilde for issuing an emergency rule that preserved the valued policy law after the legislature had repealed it as part of the general revision of insurance contract law. In its action for a declaratory judgment, Mutual Service argued that the emergency rule was "invalid and in violation of the Constitution of the State of Wisconsin" and that extending the valued policy law by rule beyond the legislature's June 21, 1976, expiration date was an "interference with the legal rights and privileges" of the insurance company. *Mutual Serv. Cas. Ins. Co. v. Wilde*, Unpublished Complaint at 3 (Dane County Circuit Court Case No. 155450, (March 8, 1977) (as discussed in *Insurer Challenges State Fire Ruling*, Milw. J., Feb. 15, 1977, at I–7).

[9] Wisconsin Stat. § 600.12(1) predates the restoration of the valued policy law. *See* Chapter 260, Laws of 1971.

Rather, the law focuses on the uses to which the owners put the property. The burden is on the insurer to conduct an inspection and secure an accurate appraisal before entering into the contract. *See* Baumann, *Recovery Under the Valued Policy Law*, at 46.

¶ 62. The OCI also directs our attention to the extrinsic sources generated after the 1979 reenactment of the valued policy law. Extrinsic aids include postenactment events. *Juneau County*, 221 Wis. 2d at 643. Although these materials are probative, we approach nonlegislative sources cautiously, and we do not afford them the same relevance or weight as evidence of legislative intent. *Id.* at 643, 650.

¶ 63. In particular, the OCI includes information pertaining to the promulgation of Wis. Admin. Code § INS 4.01(2)(e). Shortly after reenactment of the valued policy law, the OCI turned to an advisory council made up of commission staff members and representatives of the insurance industry. In its discussion of combined-use properties, the valued policy law subcommittee proposed:

> Commercial occupied dwellings are not subject to the law unless the commercial use is incidental. Examples of incidental use are insurance agent's offices, piano lessons, and artist's studios. A store or tavern with an apartment above would be non-incidental commercial use.

Minutes of the Property and Casualty Advisory Council, August 1, 1980 [hereinafter *Council Minutes*]. The subcommittee remarked that "[t]here is a common understanding of incidental use, but no specific definition." *Id.*

¶ 64. In 1981, Representative Calvin J. Potter asked Deputy Commissioner Thomas R. Hefty to

explain the rationale for excluding combined-use property from the statute and the meaning of "property used on 'an incidental basis' for commercial purposes." Letter from Calvin J. Potter, Chairperson, Assembly Committee on Financial Institutions, to Thomas R. Hefty, Deputy Commissioner, Office of the Commissioner of Insurance (Feb. 11, 1981). Mr. Hefty replied:

> The rationale for excluding real property which is used for commercial (non-dwelling) purposes from the provisions of s. 632.05(2) is that 632.05(2) only applies to real property which is owned and occupied by the insured as a dwelling. *If a property is used for commercial purposes, then it is no longer considered as being a dwelling.* Examples of incidental use of a dwelling for commercial purposes which would not remove the property from the classification of a dwelling would be: use of a portion of a dwelling for office uses, such as real estate or *insurance agent*; or give professional instruction, such as music or dancing lessons (emphasis added).

Letter from Thomas R. Hefty, Deputy Commissioner, Office of the Commissioner of Insurance, to Calvin J. Potter, Chairperson, Assembly Committee on Financial Institutions (Feb. 19, 1981).

¶ 65. The valued policy subcommittee also made some pertinent observations in its discussion of seasonal dwellings. Because the "[l]egislative history is not clear, but seasonal dwellings were included in prior laws," the subcommittee agreed that the statute should apply to such properties; after all, "[t]he statute doesn't say 'principal dwelling.'" *Council Minutes.* However, Mr. Hefty later added that "if a dwelling is ever used by someone other than the owner then it is no longer

244

owner-occupied and s. 632.05(2) would not apply to it." Letter from Hefty to Potter of Feb. 19, 1981.[10]

¶ 66. These postenactment materials do not support the OCI's interpretation of the valued policy law. Instead, they suggest that the OCI, not the legislature, narrowed the application of the valued policy law by selectively eliminating certain dwellings from the statute's reach. "Incidental use," which provides the insured owner the benefits of the law, includes insurance agents' home offices but excludes homes situated above stores or taverns. The law applies to seasonal dwellings, but only if the insured has not rented the property to a non-owner for any period of time. This latter interpretation was rejected by the court of appeals in *Kohnen*, 111 Wis. 2d 584.

¶ 67. The extrinsic sources also suggest that in other contexts, the OCI approaches the statutory language differently. For example, in preparing to extend the law to seasonal homes, the valued policy law subcommittee relied on the statute's failure to use the word "principal" to modify "dwelling." Here, on the other hand, the OCI asks us to read nothing into the legislature's choice to omit a word. Petitioner's Reply Brief at 8–9. Similarly, although the OCI argues in this case that the word "dwelling" is ambiguous and requires more than a dictionary definition, the agency rule itself is based on a "common understanding of incidental use" with "no specific definition."

---

[10] This observation comports with the valued policy subcommittee's observation that "[s]ome people are renting to family members as a tax dodge, but the subcommittee felt that they are sophisticated and less in need of the law's protection." Minutes of the Property and Casualty Advisory Council, August 1, 1980.

¶ 68. We conclude that the extrinsic evidence does not counter our interpretation of the valued policy law. The legislative history reveals no explicit legislative intent to restrict the types of dwellings to which the valued policy law applies. The legislative choice to narrow the scope of the law from all real property to only dwellings owned and occupied by the insured does not lead to the conclusion that the legislature further intended to restrict the statute to particular dwellings owned and occupied by the insured. The legislature did not create classes of dwellings owned and occupied by the insured. The extrinsic evidence demonstrates a concerted effort within the commission to create these classes and narrow the scope of the new statute. Hence, the only exclusions we find are those created by the OCI in the administrative rule.

VALIDITY OF WIS. ADMIN. CODE § INS 4.02(2)(e)

¶ 69. We now turn to the question of whether Wis. Admin. Code § INS 4.01(2)(e) is invalid. Courts give weight to statutory interpretations, particularly when those interpretations have been accepted by courts and the legislature over a number of years. *Juneau County*, 221 Wis. 2d at 641 n.7. Although the rule-making process creates agency expertise to which courts grant deference, the levels of deference are not uniform. *See Richland Sch. Dist. v. DILHR*, 174 Wis. 2d 878, 892, 498 N.W.2d 826 (1993); *Kelley Co.*, 172 Wis. 2d at 244. An agency rule cannot defeat the plain language of an unambiguous statute. *Lincoln Sav. Bank v. DOR*, 215 Wis. 2d 430, 443, 573 N.W.2d 522 (1998). Thus, this court grants no deference to agency

interpretations that contradict the clear meaning of a statute. *Id.* (citing *UFE Inc.*, 201 Wis. 2d at 282 n.2).

¶ 70. An administrative rule is invalid if it exceeds the statutory authority of the promulgating agency. Wis. Stat. § 227.40(4)(a). To determine whether an agency has exceeded its statutory authority in promulgating a rule, this court first examines the enabling statute. *In Interest of A.L.W.*, 153 Wis. 2d 412, 417, 451 N.W.2d 416 (1990). The enabling statute indicates whether the legislature expressly or impliedly authorized the agency to create the rule. *Id.* (citing *Brown County v. H&SS Dep't*, 103 Wis. 2d 37, 48, 307 N.W.2d 247 (1981)).

¶ 71. In this case, an enabling statute expressly authorized the OCI to issue rules enforcing the valued policy law. Wisconsin Stat. § 227.11(2)(a) provides, however, that "a rule is not valid if it exceeds the bounds of correct interpretation."

¶ 72. The Seiders contend that the administrative rule is invalid because it exceeds the statutory authority of the OCI. A rule exceeds an agency's statutory authority if it conflicts with an unambiguous statute. *Basic Prods. Corp.*, 19 Wis. 2d at 186. An agency interpretation is not reasonable if it contradicts either the language of a statute or legislative intent. *Ide v. LIRC*, 224 Wis. 2d 159, 167, 589 N.W.2d 363 (1999). In those cases in which a conflict arises between a statute and an administrative rule, the statute prevails. *Richland Sch. Dist. v. DILHR*, 166 Wis. 2d 262, 278, 479 N.W.2d 579 (Ct. App. 1991), *aff'd*, 174 Wis. 2d 878, 498 N.W.2d 826 (1993).

¶ 73. If the rule promulgated by the OCI contradicts the language of Wis. Stat. § 632.05(2) or the

247

statute's legislative intent, the rule is not reasonable, exceeds the agency's statutory authority, and must be invalidated.

¶ 74. We begin by considering whether the agency rule contradicts the language of the valued policy law. The key word in the statute is "dwelling." "Dwelling" is not a technical term. *Drangstviet*, 195 Wis. 2d at 600. Section 632.05(2) places no restrictions on its use of the word "dwelling." Nothing in the statute, or the ordinary meaning of the term, indicates that additional uses alter a building's status as a dwelling. Under the circumstances of this case, this property was "owned and occupied. . .as a dwelling." The Seiders owned no other home, and they occupied no other property as a dwelling. Thus, the statute entitled them to the benefits of the valued policy law.

¶ 75. By contrast, the rule provides:

> (e) Combined commercial and residential properties. A policy insuring real property any part of which is used for commercial (non-dwelling) purposes other than on an incidental basis is not subject to s. 632.05(2), Stats.

Wis. Admin. Code § INS 4.01(2)(e). There is no dispute that part of the Seiders' property was used for commercial, non-dwelling purposes. The use was not "incidental." The rule therefore deprived the Seiders of the benefits of the valued policy law. The rule's conflict with the statute is inescapable. Consequently, the rule cannot stand.

¶ 76. The OCI suggests that it will be difficult for administrative agencies to promulgate clarifying rules when statutory ambiguity can depend on the facts of a particular case. As we observed earlier, this court cannot suspend statutory operation simply because an

unexpected result might arise in a particular situation. *Reedsburg Farmers Mut.*, 8 Wis. 2d at 412. The validity of an agency rule should not pivot on the possibility of unexpected results. Nor should we uniformly validate agency rule promulgation because factual context might impact statutory interpretation.

¶ 77. Even if we were to accept the OCI's premise that factual ambiguity compromises agency rule promulgation, we nonetheless are required to invalidate Wis. Admin. Code § INS 4.01(2)(e) because it is unreasonable on other grounds. A rule also exceeds statutory authority if it contradicts legislative intent. *Ide*, 224 Wis. 2d at 167.

¶ 78. The legislative history reveals no policy objectives designed to narrow the types of dwellings to which the valued policy law applies. By eliminating a class of dwellings from the benefits of the valued policy law, the OCI, not the legislature, created categorical exceptions within the statute. In effect, the OCI superimposed its policy judgments upon those of the legislature by determining which insured parties were entitled to benefit from the broad statutory provisions of the valued policy law.[11] "An agency charged with administering the law may not substitute its own policy for that of the legislature." *DeBeck*, 172 Wis. 2d at 388 (quoting *Niagara of Wis. Paper Corp. v. DNR*, 84 Wis. 2d 32, 48, 268 N.W.2d 153 (1978)).

¶ 79. The agency rule conflicts with the language of the valued policy law and, more broadly, its legislative intent. We therefore find that Wis. Admin. Code

---

[11] The agency's policy making is apparent in its conclusion that certain persons "are sophisticated and less in need of the law's protection." *See Council Minutes* and ¶ 53, n.5.

§ INS 4.01(2)(e) exceeds the statutory authority of the OCI, and under Wis. Stat. § 227.40(4)(a) we are required to invalidate it.

## CONCLUSION

¶ 80. We hold that Wis. Admin. Code § INS 4.01(2)(e) is invalid because it exceeds the statutory authority of the OCI. We further find that under the facts of this case, the valued policy law is not ambiguous. Application of the statute to combined-use dwellings like the Seiders' will not produce absurd results. We also acknowledge the history of Wisconsin's valued policy law and its public policy mandate. This court has applied those policy objectives consistently since 1874, as we must. It is the role of the legislature to expand, contract, or repeal the statute. Had the legislature intended to exclude particular dwellings, it would have done so expressly. An agency rule that renders the statute inapplicable to real property that the insured owns and occupies as a dwelling is not reasonable. Therefore, we affirm the decision of the court of appeals, reversing and remanding the cause to the circuit court for the entry of a declaratory judgment.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 81. JON P. WILCOX, J. *(dissenting)*. The majority concludes that Wis. Admin. Code § INS 4.01(2)(e) exceeds the statutory authority of the Office of the Commissioner of Insurance (OCI) because it conflicts with the language and legislative intent of Wis. Stat. § 632.05(2). Majority op. at ¶ 79. I believe that § INS 4.01(2)(e) is a reasonable interpretive rule that does not conflict with the language or intent of

250

§ 632.05(2). I would not overturn the OCI's reasonable, longstanding rule.

¶ 82. Wisconsin Stat. § 601.41 (1997–98)[1] authorizes the OCI to administer Chapters 600 to 655 of the Wisconsin Statutes and to promulgate interpretive rules. Thus, the OCI is authorized to "prescribe forms and procedures in connection with any statute enforced or administered by it, if the agency considers it necessary to effectuate the purpose of the statute." Wis. Stat. § 227.11(2)(b). The public policy reflected in agency rule-making "is no less fundamental or well-defined merely because it is to be found not in a statute but in the administrative code." *Winkelman v. Beloit Mem'l Hosp.*, 168 Wis. 2d 12, 23, 483 N.W.2d 211 (1992). Although this court may declare an interpretive rule invalid, it should not do so unless the rule violates the constitution, exceeds the statutory authority of the agency adopting it, or was adopted without compliance with statutory rule-making procedures. Wis. Stat. § 227.40(4)(a).

¶ 83. Administrative rules promulgated pursuant to a power delegated by the legislature " 'should be construed together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason.' " *State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998)(quoting *Law Enforcement Standards Bd. v. Village of Lyndon Station*, 101 Wis. 2d 472, 489, 305 N.W.2d 89 (1981)). Even if Wis. Stat. § 632.05(2) is unambiguous, Wis. Admin. Code INS § 4.01(2)(e) is not necessarily invalid unless it conflicts with the statute. *See Basic Prods. Corp. v. Department of Taxation*, 19 Wis. 2d 183, 186, 120

---

[1] Subsequent references to Wisconsin Statutes are to the 1995–96 volumes unless otherwise indicated.

N.W.2d 161 (1963). I would not conclude that § INS 4.01(2)(e) conflicts with § 632.05(2).

¶ 84. Wisconsin Admin. Code § INS 4.01(2)(e) does not contradict the statute. It merely clarifies the meaning of the word "dwelling" by distinguishing between people who conduct a business out of their residence and those who reside at their place of business. As the trial court stated:

> It is true that by clarifying the word "dwelling", the OCI was in essence limiting and restricting the scope of the valued policy law. However, by doing so, the OCI was not contravening the words or intent of the statute; by categorizing the word "dwelling" and consequently narrowing the applicability of the valued policy law, the OCI was not exceeding its power or promulgating a rule that conflicts with state law. Rather, the OCI was clarifying and interpreting the provisions of a statute that it was charged to administer and enforce; a statute whose plain meaning could yield situations inconsistent with the original intent of the legislature.

¶ 85. The majority stretches the OCI's argument in order to make it appear excessive. The majority claims that the OCI uses "inverse logic." Majority op. at ¶ 37 (explaining that even if "if p, then q" is true, it does not necessarily follow that "if not p, not q" is also true). However, the OCI does not rely on inverse logic. The OCI does not argue that a building can never be a dwelling if it is also used for commercial purposes. The OCI merely argues that when a building is put to both commercial and residential use, a question arises about whether the building is still "owned and occupied by the insured as a dwelling." Wisconsin Admin. Code INS § 4.01(2)(e) is a reasonable interpretation that provides a clear rule in such cases. Moreover, Wis. Admin.

Code § INS 4.01(2)(e) itself recognizes that commercial use does not automatically affect a property's status as a "dwelling." Under the rule, "[a] policy insuring real property any part of which is used for commercial (non-dwelling) purposes other than on an incidental basis is not subject to s. 632.05(2), Stats." § INS 4.01(2)(e). Thus, the rule provides that incidental commercial use does not affect a building's status as a dwelling.

¶ 86. The undisputed facts of this case demonstrate why the rule is a reasonable interpretation of the statute. The Seiders presented themselves to the insurer as a business, and they insured the Steinthal Valley Lodge for business purposes. The policy the Seiders obtained was a Commercial Package Policy, which described the premises as a "restaurant." Majority op. at ¶ 8. The insureds were identified as "Richard R. Seider and Jean M. Seider, *d/b/a Steinthal Lodge.*" *Id.* (emphasis added). Nothing in the policy described the premises as having any residential purpose. The policy explicitly indicated that if a loss occurred, coverage would be limited to the property's actual cash value. *Id.* at ¶ 9. Having obtained this "actual cash value" policy of commercial insurance for their restaurant business, the Seiders now seek to take advantage of the valued policy law, which by its own terms applies to "real property which is owned and occupied by the insured as a dwelling." Wis. Stat. § 632.05(2).

¶ 87. Property insurance boils down to a risk-loss analysis. In the insurance context, a rule that defines "dwelling" by distinguishing between "incidental" and "non-incidental" commercial usage makes sense. Common sense illuminates the importance of this difference. For example, compare an attorney who makes business-related phone calls out of his or her home with the Seiders, who reside in the same building

where they conduct their restaurant business. Restaurants typically contain a deep fryer in the kitchen and serve food or alcoholic beverages to many patrons every evening. Obviously, there is a much greater risk that the building that contains a restaurant will be wholly destroyed by some accident such as a fire. Insurers rely on this distinction, along with all other rules and regulations, when determining policy rates.

¶ 88. Contrary to the majority, I believe that the legislative history supports Wis. Admin. Code § INS 4.01(2)(e). Beginning in 1874 and until its repeal in 1975, the valued policy law applied to *all* real property. *See* Majority op. at ¶¶ 54, 56. In 1979 the legislature reenacted the valued policy law in modified form, covering only property "which is owned and occupied by the insured as a dwelling." *Id.* at ¶¶ 58–59. This history shows that the legislature only wished to extend the valued policy law protection to property that is used as a "dwelling." The OCI used its rule-making authority to clarify the application of the statute in multiple-use situations like the one in this case.

¶ 89. Moreover, the legislature had the opportunity to reject the rule before it went into effect and during the 18 years before this case came to this court. In 1981 the rule was referred to the Assembly Committee on Financial Institutions for review under Wis. Stat. § 227.018(4)(1979–80). Representative Potter, who chaired the committee, asked the OCI to respond to several questions, including the rationale for Wis. Admin. Code § INS 4.01(2)(e). Letter from Calvin J. Potter, Chairperson, Assembly Committee on Financial Institutions, to Thomas R. Hefty, Deputy Commissioner, Office of the Commissioner of Insurance (Feb. 11, 1981). Specifically, Representative Potter wrote, "would you please respond to these ques-

tions by February 23, 1981, in order to assist me in determining whether scheduling a meeting with the Insurance Commissioner's Office, pursuant to § 227.018(4)(b), Stats., is necessary." *Id.* The deputy commissioner of the OCI responded that the rationale for the rule "is that [Wis. Stat. § ] 632.05(2) only applies to real property which is owned and occupied by the insured as a dwelling. If a property is being used for commercial purposes, then it is no longer considered as being a dwelling." Letter from Thomas R. Hefty, Deputy Commissioner, Office of the Commissioner of Insurance, to Calvin J. Potter, Chairperson, Assembly Committee on Financial Institutions (Feb. 19, 1981). The committee had the power to object to the rule and refer the rule to the joint committee for review of administrative rules. *See* Wis. Stat. § 227.018(4)(d) and (5)(a) (1979–80). However, the legislature took no further action, and the rule went into effect and has been the law of Wisconsin for 18 years. This sequence of events supports the conclusion that the legislature considered the OCI's interpretation of the valued policy law to be reasonable.

¶ 90. In sum, I believe that Wis. Admin. Code INS § 4.01(2)(e) is a reasonable interpretive rule that does not conflict with Wis. Stat. § 632.05(2). The OCI has enforced this rule, relied on by policyholders and insurers, for over 18 years. The legislature was aware of, yet took no action against, the rule. The Seiders purchased a commercial insurance policy for a restaurant, and their commercial usage of the premises was not "incidental." Under the OCI's reasonable interpretive rule, the valued policy law is inapplicable. Therefore, I respectfully dissent.

¶ 91. I am authorized to state that Justice N. PATRICK CROOKS joins this dissent.